BURNS P. DOWNEY AND MARJORIE DOWNEY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 11120-89.      Filed July 31, 1991.

---

[14]The foregoing rules have been changed by the Tax Reform Act of 1986. See sec. 201(a), Pub. L. 99-514, 100 Stat. 2121.

*Steven E. Reick,* for the petitioners.
*Marjory A. Gilbert, James F. Hanley, Jr.,* and *Jan E. Lamartine,* for the respondent.

## OPINION

HALPERN, *Judge:* * Respondent has determined a deficiency of $43,237[1] in petitioners' Federal income tax for 1985, together with additions to tax under sections 6653(a) and 6661 (since conceded by respondent). This case requires us to determine the taxability of an amount received in settlement of a suit brought under the Age Discrimination in Employment Act of 1967, as amended (the ADEA). Pub. L. 90-202, 81 Stat. 602-608 (29 U.S.C. secs. 621-634). In their petition, petitioners assign error to respondent's determination that the portion of such amount received and categorized as liquidated damages constitutes gross income, subject to tax. By an amendment to their petition, petitioners assign error to their inclusion in gross income of the portion of the settlement amount categorized as nonliquidated damages. The question for our consideration is whether all or any portion of the settlement amount is excludable from gross income under section 104(a)(2). Section 104(a)(2) allows for the exclusion of "the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness."

The parties have submitted this case fully stipulated, and the facts so stipulated are found accordingly. By this reference, the stipulation of facts and the attached exhibits are incorporated herein.

---

*By order of the Chief Judge, this case was reassigned and submitted to Judge James S. Halpern for disposition.

[1]The parties have stipulated that respondent determined a deficiency of $42,237. Any inconsistency can be resolved in the Rule 155 computation. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

*Background*

Petitioners are husband and wife. At the time of filing their petition, petitioners resided in Oak Park, Illinois. When used in the singular, the term "petitioner" is intended to refer to petitioner husband, Burns P. Downey.

*The Age Discrimination in Employment Act*

As a preliminary matter, we will describe relevant aspects of the ADEA. The ADEA broadly prohibits arbitrary discrimination in the workplace based on age. *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 120 (1985). See 29 U.S.C. sec. 623(a).[2] The preamble to the ADEA declares that its purpose is "to promote employment of older persons based on their ability rather than age [and] to prohibit arbitrary age discrimination in employment." 29 U.S.C. sec. 621(b). Section 4(a)(1) of the ADEA proscribes differential treatment of workers between the ages of 40 and 70 "with respect to * * * compensation, terms, conditions, or privileges of employment." 29 U.S.C. secs. 623(a)(1), 631(a).

Section 7(b) of the ADEA provides that the rights created by the ADEA are to be "enforced in accordance with the powers, remedies, and procedures" of the Fair Labor Standards Act (the FLSA). See 29 U.S.C. sec. 626(b) (ADEA provision incorporating 29 U.S.C. secs. 211(b), 216(b), 216(c), and 217).[3] The remedial provisions of the two statutes, though, are not identical.

Under the FLSA, employers who violate minimum wage or maximum hour laws are liable to the affected employees in the amount of their unpaid minimum wages, or their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 U.S.C. sec. 216(b). Regarding liquidated damages, however, if the employer shows "that the act or omission giving rise to such action [for unpaid minimum wages or unpaid overtime compensation under the FLSA] was in good faith and that he had reasonable grounds

---

[2]The ADEA (29 U.S.C. sec. 623(a)(1)) provides in part that:
It shall be unlawful for an employer—
(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; * * *
[3]See also Fair Labor Standards Act of 1938, Pub. L. 75-718, 52 Stat. 1060 (29 U.S.C. secs. 201-219).

for believing that his act or omission" did not violate the FLSA, the court may refuse to award liquidated damages. 29 U.S.C. sec. 260.

In contrast, section 7(b) of the ADEA provides that a prevailing plaintiff is entitled to liquidated damages "only in cases of willful violations." 29 U.S.C. sec. 626(b). Of course, as under the FLSA, a plaintiff under the ADEA can recover other than liquidated damages. Section 7(b) empowers the courts "to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section." 29 U.S.C. sec. 626(b). In contrast to "liquidated damages" awarded under section 7(b), we will refer to amounts received pursuant to the quoted grant of authority as "nonliquidated damages."

*Petitioner's Employment History With United Air Lines, Inc.*

Petitioner was born on September 19, 1921. In 1945, petitioner was employed by United Air Lines, Inc. (United), and, by early 1981, petitioner was a captain, flying Boeing 747 jets. Generally, United's flight deck crews included two pilots (i.e., captain and first officer) and a second officer.

To continue flying as a captain, petitioner was required to submit to two Federal Aviation Administration (FAA) physicals a year and to hold a specific FAA medical certificate. On September 1, 1981, the FAA revoked petitioner's medical certificate, and United placed petitioner on sick leave. Pursuant to United's sick leave policy, petitioner, utilizing accumulated sick leave, continued to draw his full salary.

On September 19, 1981, petitioner turned 60 years old. FAA rules barred persons over the age of 60 from serving as captains or first officers, but did not preclude such persons from serving as second officers (the age 60 rule). See 14 C.F.R. sec. 121.383(c). United, however, had a somewhat contrary policy. United prohibited persons over the age of 60 who had served as a captain from holding *any* position in the flight deck crew, including that of a second officer.

Therefore, on October 1, 1981, the commencement of the first month after petitioner turned 60, United changed petitioner's status from sick leave to retired.

As of October 1, 1981, petitioner ceased earning his captain's salary of $10,182 per month and began receiving $5,454 a month in retirement benefits. Upon placement in retirement status, petitioner "forfeited" the balance of his accumulated sick leave. Petitioner calculated that, if United had reassigned him to a position as a second officer, rather than retired him, he would have been entitled to approximately $89,794 of additional sick pay.

*Petitioner's Suit Against United Air Lines, Inc.*

In June 1984, petitioner filed a complaint under the ADEA against United. The complaint was filed in the U.S. District Court, Northern District of Illinois, Eastern Division. *B. Price Downey v. United Air Lines, Inc.,* docket No. 84 C 5534. Petitioner's complaint alleged that United's refusal to allow petitioner to serve as a second officer after petitioner turned 60 years old constituted unlawful age discrimination and that United's actions were a willful violation of the ADEA. Petitioner's complaint mentions no other grounds for bringing the lawsuit. As relief, petitioner sought in his complaint, inter alia, reinstatement, retroactive seniority rights, employee benefits as if petitioner's employment had not been interrupted, backpay plus interest, and liquidated damages.

In September 1984, petitioner regained his FAA medical certificate. A month later, in October 1984, petitioner applied to be reinstated on a flight deck crew in a position other than captain or first officer. United rejected petitioner's application based on its policy that persons over 60 years of age who had served as a captain were prohibited from holding any position on the flight deck crew, including the position of second officer.

Later in 1984, petitioner's civil action against United was joined with two other ADEA cases also in the U.S. District Court, Northern District of Illinois, Eastern Division. *Monroe v. United Air Lines, Inc.* (docket No. 79 C 360); *Higman v. United Air Lines, Inc.* (docket No. 79 C 1572). *Monroe* and *Higman* were the lead cases in a class action

suit filed against United prior to the filing of petitioner's complaint and were consolidated themselves for the purpose of trial. Before petitioner filed his 1984 complaint against United, the trial court entered judgment on jury verdicts in favor of the plaintiffs and against United in *Monroe* and *Higman.* On appeal, the U.S. Court of Appeals for the Seventh Circuit reversed and remanded the class action suit on the basis of erroneous jury instructions. *Monroe v. United Air Lines, Inc.,* 736 F.2d 394, 409 (7th Cir. 1984). The parties have stipulated that petitioner's 1984 complaint was filed after the trial court's judgment but before the Seventh Circuit's reversal and remand.

*Settlement of ADEA Suit*

In late 1985, petitioner and United entered into a settlement agreement (the settlement agreement). The parties have stipulated that petitioner and United reached a settlement after the Seventh Circuit's reversal and remand in *Monroe* and *Higman* but before the disposition of the remanded class action suit. Pursuant to the settlement agreement, petitioner, in consideration for the payment by United of $120,000, released United from all claims arising out of his employment relationship with United, whether or not asserted in the ADEA action.

The settlement agreement allocated one-half of United's payment of $120,000 to nonliquidated damages and one-half to liquidated damages. In settlement negotiations, United's counsel insisted on language allocating United's payment between nonliquidated and liquidated damages, and petitioner agreed to the allocation to obtain the settlement. The settlement agreement stated that the $60,000 attributable to nonliquidated damages would be subject to all tax withholdings and deductions as required by law.

Further, the settlement agreement specified that petitioner and United were to execute and file a stipulation to dismiss with prejudice the ADEA action and that the entry by the U.S. District Court of an order dismissing with prejudice the ADEA action was "a necessary condition precedent to any obligation by United to pay" petitioner the sum of $120,000. The recital clauses in the settlement

agreement referred to petitioner's ADEA action, but did not cite any other claims against United.

*Procedural History*

On their Federal income tax return for 1985, petitioners included as gross income the sum of $60,000 attributable to nonliquidated damages but did not include the sum of $60,000 attributable to liquidated damages. Petitioners claimed under section 212 a deduction in the amount of $40,000 for "legal expenses incurred to recover back pay award."

Upon completion of his examination of petitioners' return, respondent determined that petitioners should have included the $60,000 attributable to liquidated damages and that no amount was deductible as legal fees.[4] As stated, petitioners have challenged respondent's determination that the $60,000 attributable to liquidated damages is includable in gross income and further have asserted that they also should have excluded from gross income the $60,000 attributable to nonliquidated damages.

The parties have stipulated that, if the Court determines that any portion of the $120,000 settlement amount is includable in petitioners' income for 1985, a proportionate part of the disallowed attorneys fees will be allowed as an itemized deduction. The parties have stipulated also that petitioners are not liable for additions to tax under section 6653(a) or 6661.

*Discussion*

I. *Introduction*

Neither the Internal Revenue Code nor the ADEA specifically addresses the taxability of amounts received on account of claims under the ADEA. Petitioners argue that such amounts, whether received as liquidated or nonliquidated damages, are excludable from gross income under section 104(a)(2), as damages received on account of personal injuries. In contrast, respondent argues that petitioner's receipt of an amount as nonliquidated damages was in

---

[4]Respondent also determined that petitioners had omitted from income an unrelated fee of $2,566. Petitioners concede that adjustment.

settlement of a claim for backpay, not a claim for personal injuries, and that such amount is not excludable under section 104(a)(2). Respondent further argues that liquidated damages under the ADEA are equivalent to punitive damages and that, therefore, petitioner's receipt of liquidated damages should be treated as in settlement of a claim for punitive damages, which are not excludable under section 104(a)(2).

The parties do not dispute the allocation of the settlement amount into two equal portions, the characterization of those portions as representing, respectively, nonliquidated and liquidated damages under the ADEA (as we have used those terms), or the fact that petitioner received that settlement amount solely on account of his claim under the ADEA. We agree with the parties regarding those matters and find that petitioner received the settlement amount solely on account of his ADEA claim. Thus, we treat the question here as concerning the taxability of nonliquidated and liquidated damages under the ADEA.

## II. *The Exclusion From Gross Income of Damages Received on Account of Personal Injuries.*

### A. *A Dispute as to the Scope of Section 104(a)(2)*

The dispute between the parties is, in essence, a dispute over the scope of the exclusion from gross income for damages received on account of personal injuries or sickness now found in section 104(a)(2). Since the scope of that exclusion has been subject to a great deal of controversy in other cases, we will begin by exploring in some detail the history and interpretation of that exclusion.

### B. *History of the Exclusion*

The exclusion for damages received on account of personal injuries or sickness first appeared in the tax statute in 1918. See Revenue Act of 1918, Pub. L. 65-254, ch. 18, sec. 213(b)(6), 40 Stat. 1057, 1065-1066.[5] Previously, the adminis-

---

[5]Sec. 213(b)(6) of the Revenue Act of 1918 excluded from gross income the following:

Amounts received, through accident or health insurance or under workmen's compensation acts, as compensation for personal injuries or sickness, plus the amount of any damages received whether by suit or agreement on account of such injuries or sickness.

Substantially identical language has appeared in each intervening revenue act and codification of the tax law.

trative position of the tax authorities had been that the proceeds of an accident insurance policy were not gains and thus not taxable as income on the theory that such proceeds represented a return of capital. 31 Op. Atty. Gen. 304, 308 (1918). On a similar theory, "an amount received by an individual as the result of a suit or compromise for personal injuries sustained by him through accident" was not considered income subject to taxation. T.D. 2747, 20 Treas. Dec. Int. Rev. 457 (1918). Those administrative positions may have reflected too generous a view of what constitutes a return of capital (a return of capital arguably being beyond the constitutional power to tax income). Schlenger, "Disability Benefits Under Section 22(b)(5)," 40 Va. L. Rev. 549, 550-552 (1954).

The legislative history of the Revenue Act of 1918 suggests that Congress also was of the view that compensation received for, or damages received on account of, personal injuries or sickness was beyond the reach of the income tax. The relevant House report states that:

> Under the present law it is doubtful whether amounts received through accident or health insurance, or under workmen's compensation acts, as compensation for personal injury or sickness, and damages received on account of such injuries or sickness, are required to be included in gross income. The proposed bill provides that such amounts shall not be included in gross income. [H. Rept. 767, 65th Cong., 2d Sess. 9-10 (1918), reprinted in 1939-1 C.B. (Part 2) 86, 92.]

Likewise, judicial decisions of the period dealing with damages received on account of personal injuries reflect the view that such recoveries did not give rise to income. In *Hawkins v. Commissioner*, 6 B.T.A. 1023 (1927), the Board of Tax Appeals held that compensatory damages received for libel and slander were not taxable as income. The board found that "Such compensation as general damages adds nothing to the individual, for the very concept which sanctions it prohibits that it shall include a profit. It is an attempt to make the plaintiff whole as before the injury." *Id.* at 1025. See *Clark v. Commissioner*, 40 B.T.A. 333, 335 (1939) ("The theory of those cases [i.e., *Hawkins v. Commissioner, supra,* and several other earlier cases] is that recoupment on account of such losses is not income.").

We doubt whether the return of capital theory justifies the exclusion from income of the full range of damages found to be excludable under section 104(a)(2), particularly damages received in lieu of lost income. Perhaps, even originally, a more satisfactory justification for excluding a recovery for lost earnings as well as a recovery for pain and suffering may have been based on emotional and traditional, rather than logical, factors.[6] Whatever reasons initially motivated Congress to enact an exclusion for damages received on account of personal injuries or sickness, a contemporary inquiry must by necessity restrict itself to the language of section 104(a)(2), and administrative and judicial interpretations of that language.

## C. *The Nature of a Personal Injury*

As used in section 104(a)(2), the term "personal injuries" has long been understood to include nonphysical injuries as well as physical injuries. See *Bent v. Commissioner,* 87 T.C. 236 (1986), affd. 835 F.2d 67 (3d Cir. 1987) (deprivation of first amendment rights); *Church v. Commissioner,* 80 T.C. 1104, 1106 (1983) (jury award of compensatory damages in a libel suit); *Seay v. Commissioner,* 58 T.C. 32, 38 (1972) (compensation for personal embarrassment and injury to personal reputation). Moreover, courts have long held that injuries resulting from "invidious discrimination," whether on the basis of race, sex, or national origin, are injuries to the individual rights and dignity of the person and, thus, "personal injuries" for purposes of section 104(a)(2). *Burke v. United States,* 929 F.2d 1119, 1121-1122 (6th Cir. 1991), and cases cited therein; *Metzger v. Commissioner,* 88 T.C. 834, 848-849, 858 (1987), affd. without published opinion 845 F.2d 1013 (3d Cir. 1988) (sex and national origin discrimination). As such, the relevant distinction under section 104(a)(2) is between personal and nonpersonal injuries, not between physical and nonphysical injuries. *Roemer v. Commissioner,* 716 F.2d 693, 697 (9th Cir. 1983), revg. 79 T.C. 398 (1982); *Threlkeld v. Commissioner,* 87 T.C. 1294, 1300, 1305 (1986), affd. 848 F.2d 81 (6th Cir. 1988) (compensatory

---

[6]See Schlenger, "Disability Benefits Under Section 22(b)(5)," 40 Va. L. Rev. 549, 550-552 (1954); Harnett, "Torts and Taxes," 27 N.Y.U. L. Rev. 614, 626-627 (1952); Harrow, "Exemptions Under The Revenue Act of 1928," 10 Taxes 161, 163 (1932).

damages received on account of an invasion of the rights that an individual is granted by virtue of being a person in the sight of the law).

### D. *Prosecution of a Tort (or at Least a Tort-Type) Claim*

The exclusion in section 104(a)(2) is limited to "damages" received on account of personal injuries or sickness. The requirement for damages has been interpreted as requiring a lawsuit, or at least a settlement in lieu of a lawsuit. In particular, the relevant portion of the Income Tax Regulations, the validity of which neither party challenges, provides: "The term 'damages received (whether by suit or agreement)' means an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort-type rights, or through a settlement agreement entered into in lieu of such prosecution." Sec. 1.104-1(c), Income Tax Regs.

Section 104(a)(2) excludes only damages received upon the prosecution of tort or tort-type claims, not damages received upon the prosecution of economic rights arising out of a contract. *Byrne v. Commissioner*, 883 F.2d 211, 215 (3d Cir. 1989), revg. 90 T.C. 1000 (1988); *Metzger v. Commissioner*, 88 T.C. 834, 848-850, 858 (1987), affd. without opinion 845 F.2d 1013 (3d Cir. 1988). Thus, the essential element of the exclusion under section 104(a)(2) is that the damages must derive from some sort of tort or tort-type claim against the payor. *Glynn v. Commissioner*, 76 T.C. 116, 119 (1981), affd. without published opinion 676 F.2d 682 (1st Cir. 1982). The term tort has been defined as "[a] legal wrong committed upon the person or property independent of contract" or "a violation of some duty owing to plaintiff, * * * generally * * * [arising] by operation of law and not by mere agreement of the parties." Black's Law Dictionary, 1489 (6th ed. 1990). See Restatement, Torts 2d, secs. 4 (defining "duty"), 7(1) (defining "injury" as "the invasion of any legally protected interest of another") (1965). The duty, the violation of which gives rise to a tort claim, can arise by statute. See *Byrne v. Commissioner, supra* at 215 (duty not to discriminate in certain situations arising out of the FLSA); *Metzger v. Commissioner, supra* at

845, 848-849 (duty not to discriminate on the basis of sex or national origin arising out of Federal and State statutes).

### E. *Settlements*

Section 104(a)(2) contemplates that a lawsuit may be settled by agreement. Here, petitioner received the amount of $120,000 in settlement of his suit alleging that United discriminated against petitioner in violation of the ADEA. Where a settlement agreement exists, determining the exclusion from gross income depends on the *nature* of the claim that was the actual basis for settlement rather than the *validity* of such claim. *Threlkeld v. Commissioner,* 87 T.C. at 1297; *Seay v. Commissioner,* 58 T.C. 32, 37 (1972). In absence of express language stating whether the settlement amount was paid on account of personal injuries (or otherwise), the most important factor in determining any exclusion under section 104(a)(2) is "the intent of the payor" in making the payment. *Metzger v. Commissioner, supra* at 847-848; *Glynn v. Commissioner, supra* at 120.

### F. *Nature of Consequences of Tort Irrelevant*

As suggested above, the inquiry under section 104(a)(2) is whether the nature of the claim giving rise to the payment is tort or tort-like and whether the nature of the injury is personal. *Burke v. United States,* 929 F.2d 1119, 1121, 1123 (6th Cir. 1991). If the above two questions are answered in the affirmative, then our inquiry should end, and the settlement amount received on account of the personal injury is excludable from gross income under section 104(a)(2). *Burke v. United States,* 929 F.2d at 1123; *Threlkeld v. Commissioner,* 87 T.C. at 1299.

Although the direction of the necessary inquiry would seem straightforward, some confusion has arisen in the past when the focus has shifted from the source and character of the injury (a tortious invasion of personal rights) to its consequences. See *Roemer v. Commissioner,* 716 F.2d 693, 696-697, 699 (9th Cir. 1983), revg. 79 T.C. 398 (1982). Those consequences are irrelevant for purposes of the inquiry required by section 104(a)(2). *Burke v. United States,* 929 F.2d at 1123.

In *Roemer v. Commissioner*, 79 T.C. 398 (1982), revd. 716 F.2d 693 (9th Cir. 1983), we were confronted by a jury's award of compensatory damages in a libel suit. We focused on the difference between injury to personal reputation and injury to business or professional reputation. We found that, since the taxpayer had failed to show that the compensatory damages derived from injury to personal reputation, those damages were not excludable under section 104(a)(2) for lack of a personal injury.

On appeal, the U.S. Court of Appeals for the Ninth Circuit held that no distinction between injuries to personal reputation and professional reputation was justified under section 104(a)(2). *Roemer v. Commissioner*, 716 F.2d 693, 697 (9th Cir. 1983), revg. 79 T.C. 398 (1982). The Ninth Circuit found that, since the tort of defamation was a personal injury action under California law, the compensatory damages were excludable from gross income under section 104(a)(2). 716 F.2d at 700. The Ninth Circuit concluded that the distinction between injury to personal reputation and to professional reputation confused a personal injury (i.e., defamation of an individual) with its derivative consequences (i.e., loss of professional reputation and any resulting loss of income). *Id.* at 696-697, 699.

In *Bent v. Commissioner*, 87 T.C. 236 (1986), affd. 835 F.2d 67 (3d Cir. 1987), we were confronted by an amount received in settlement of a lawsuit brought by a school teacher against his employer, the local public school board. We found that the school board paid the settlement amount based on the decision of the State trial court that the teacher's First Amendment right to freedom of speech had been abridged in violation of 42 U.S.C. section 1983 (section 1983). *Id.* at 245-246. We concluded that lost earnings should be included in determining the compensatory damages received for violations of section 1983 and held that the entire settlement payment was excludable from gross income under section 104(a)(2). In affirming our decision, the U.S. Court of Appeals for the Third Circuit emphasized that the derivative consequences of a personal injury, such as lost wages, were often the best measure of the extent of the personal injury suffered. *Bent v. Commissioner*, 835 F.2d 67, 70 (3d Cir. 1987), affg. 87 T.C. 236 (1986).

In *Threlkeld v. Commissioner,* 87 T.C. 1294 (1986), affd. 848 F.2d 81 (6th Cir. 1988), we were confronted with facts that required us to reconsider our reasoning in *Roemer v. Commissioner,* 79 T.C. 398 (1982), revd. 716 F.2d 693 (9th Cir. 1983). In *Threlkeld,* we found that an amount specified in an agreement settling a malicious prosecution action as a recovery for injury to the taxpayer's professional reputation was excludable under section 104(a)(2). We held that we would no longer make the distinction we made in *Roemer v. Commissioner, supra,* between damages for injury to personal reputation and those for injury to professional reputation in determining whether damages received in a tort action are excludable from gross income under section 104(a)(2). *Threlkeld v. Commissioner,* 87 T.C. at 1300, 1305. In *Threlkeld v. Commissioner, supra* at 1308, we concluded that:

we also recognize that focusing upon the nature of the taxpayer's injury instead of the nature of the consequences flowing from that injury will often be difficult. However, this is no more difficult in most cases than the type of inquiry previously required by the line of cases, culminating in *Roemer,* which distinguished the nature of the consequences resulting from a claim.

In affirming our decision, the U.S. Court of Appeals for the Sixth Circuit stated:

We agree with the Ninth and the Third Circuits that the nonpersonal consequences of a personal injury, such as a loss of future income are often the most persuasive means of proving the extent of the injury that was suffered, and that the personal nature of an injury should not be defined by its effect. Injury to a person's hand or arm is a personal injury. This is so even though it may affect a person's professional pursuits. All income in compensation of that injury is excludable under section 104(a)(2). Similarly, the injury to taxpayer's reputation in this case was a personal injury. This is so even though it affected his professional pursuits. All income in compensation of that injury is excludable under section 104(a)(2). [*Threlkeld v. Commissioner,* 848 F.2d 81, 84 (6th Cir. 1988), affg. 87 T.C. 1294 (1986).]

The above cases explain how the consequences of a personal injury, or the actual damages suffered, do not affect our inquiry under section 104(a)(2). Whether the damages paid to the tort victim reflect a substitute for amounts or items otherwise taxable or a substitute for amounts or items to be enjoyed without a tax consequence

is irrelevant. Thus, section 104(a)(2) permits the exclusion of damages that are a substitute for the enjoyment of a whole body or of freedom from distress, such as damages for loss of limb or for pain and suffering. Likewise, the section allows the exclusion of damages that are a substitute for amounts or items that otherwise would be taxable or would potentially produce taxable benefit, such as income lost as a result of a personal injury or amounts reflecting injury to a person's business or professional reputation. *Burke v. United States,* 929 F.2d 1119, 1123 (6th Cir. 1991) (lost wages); *Threlkeld v. Commissioner,* 87 T.C. 1294 (1986), affd. 848 F.2d 81 (6th Cir. 1988) (business or professional reputation). In sum, under section 104(a)(2), we will focus on whether the injury is personal and on whether the claim resulting in payment of damages is tort or tort-like, not on the consequences of the personal injury or the actual damages suffered.

### G. *The Inquiry at Hand*

The inquiry at hand concerns the taxability of an amount received in settlement of a suit brought under the ADEA. There is no doubt that a lawsuit was brought under the ADEA and that petitioner received an amount in settlement of such suit. As we have stated, in his suit, petitioner alleged that United violated its duty under the ADEA not to discriminate on the basis of age. Accordingly, we look to the nature of the claim on which the suit was founded. *Metzger v. Commissioner,* 88 T.C. at 847; *Threlkeld v. Commissioner,* 87 T.C. at 1297; *Seay v. Commissioner,* 58 T.C. 32, 37 (1972). We seek to determine whether petitioner's claim under the ADEA sounded in tort and whether the nature of the injury arising from age discrimination is personal for purposes of section 104(a)(2). See *Threlkeld v. Commissioner, supra* at 1299. If we answer those questions in the affirmative, then our inquiry has ended, and the payment petitioner received in settlement of the age discrimination claim is excludable under section 104(a)(2). *Id.* We need not consider the nature of the consequences of the personal injury (such as whether the victim suffered pain and suffering or was deprived of all or a portion of his livelihood). See *id.*

Regarding those questions, first, courts have held that discrimination claims are in the nature of tort or tort-type claims. *Byrne v. Commissioner*, 883 F.2d 211, 215 (3d Cir. 1989), revg. 90 T.C. 1000 (1988). More specifically, age discrimination claims brought under the ADEA have been found to be in the nature of tort or tort-type claims. *Pistillo v. Commissioner*, 912 F.2d 145, 149-150 (6th Cir. 1990), revg. T.C. Memo. 1989-329. Second, courts have held also that invidious discrimination, including age discrimination, is a personal injury for the purposes of section 104(a)(2). *Burke v. United States*, 929 F.2d at 1121-1122; *Pistillo v. Commissioner, supra* at 150. We believe that those answers to those questions support exclusion of the whole of the settlement amount received by petitioner under section 104(a)(2), as damages received on account of personal injuries.

Since in the past we have distinguished between nonliquidated and liquidated damages received under the ADEA, we will focus separately on each of the two portions of the settlement amount.

## III. *Nonliquidated Damages Under the ADEA*

### A. *The Receipt in Question*

Simply put, the ADEA prohibits discrimination in employment on the basis of age and accords victims of such discrimination the right to sue for relief. See 29 U.S.C. secs. 621(b), 623(a), 626(b), 626(c), 633. The courts are empowered to grant appropriate legal or equitable relief, including, among other relief, liquidated damages and damages for pecuniary losses. See 29 U.S.C. sec. 626(b). In the complaint petitioner filed against United, petitioner requested, as relief, inter alia, reinstatement, retroactive seniority rights, employee benefits as if petitioner's employment had not been interrupted, and backpay plus interest. The one-half of the settlement amount allocated to nonliquidated damages is not further allocated among the items of requested relief. Since the parties seem to have so assumed, we will assume, without deciding, that the one-half of the settlement amount allocated to nonliquidated damages is fully allocable to backpay or other items that might otherwise be taxable if not received in settlement of a claim under the ADEA.

B. *Positions of the Parties and Our Previous Position*

Petitioners argue that the portion of the settlement amount allocable to nonliquidated damages is excludable from gross income under section 104(a)(2) as damages received on account of personal injuries. Respondent counters that such nonliquidated damages were received on account of a wage claim against United and, thus, section 104(a)(2) does not apply, and the receipt is taxable. Although, on similar facts, previously, we have agreed with respondent, we no longer do so. We will explain our reasons below, but we first will review our previous position on the taxability of nonliquidated damages under the ADEA.

In *Rickel v. Commissioner*, 92 T.C. 510 (1989), affd. in part and revd. in part 900 F.2d 655, 661-663 (3d Cir. 1990), we focused on the tax treatment of payments made to the taxpayer pursuant to an agreement settling an ADEA suit. The taxpayer had requested, among other relief, backwages and an equal sum as liquidated damages. We likened the damages received in lieu of wages to damages received in an action for breach of contract and, as such, held them nonexcludable under section 104(a)(2). *Id.* at 519-521. With regard to the liquidated damages, however, which were measured by that same lost income, we found such measure to be only a substitute for difficult to measure personal injuries resulting from discriminatory employment practices and held such recovery to be excludable under section 104(a)(2). *Id.* at 521-522.

On appeal, the U.S. Court of Appeals for the Third Circuit partially disagreed with our analysis and partially reversed our decision. *Rickel v. Commissioner*, 900 F.2d 655 (3d Cir. 1990), affg. in part and revg. in part 92 T.C. 510 (1989). The Third Circuit reviewed only our holding that amounts received in lieu of wages under the ADEA were not excludable under section 104(a)(2) and explicitly refused to review our decision that the liquidated damages were excludable. 900 F.2d at 666 n.18. According to the Third Circuit, after finding that age discrimination was similar to a personal injury and that an ADEA action constituted the assertion of a tort-type right, we should have ended our analysis there and found that all damages, including payment of backwages, flowing from the age discrimination

were excludable under section 104(a)(4). *Id.* at 661. The Third Circuit suggested that "By going further and rummaging through the taxpayer's prayers for relief in order to determine the nature of his claim, [we were] simply defining the nature of the taxpayer's injury by reference to its nonpersonal consequences" (such as lost wages). *Id.* at 661-662.

In the Third Circuit's view, the ADEA gives rise to a duty on the part of employers to refrain from discriminating on the basis of age in certain situations. 900 F.2d at 662. The duty to refrain from age discrimination arises by operation of law and does not depend on any contractual relationship. *Id.* Generally, the Federal employment discrimination statutes were designed to go beyond the "mere employer-employee context, protecting individuals from various forms of discrimination even if they are not yet in a contractual relationship, e.g., refusal to hire contexts." *Id.* The nonpersonal consequences of discrimination, such as any loss of wages, does not transform discrimination into a nonpersonal injury. *Id.* at 663. In sum, the Third Circuit held that an ADEA suit was "analogous to the assertion of a tort-type right to redress a personal injury" and that, "just as in the case of a physical personal injury, all the damages received by the taxpayer on account of age discrimination are excludable under section 104(a)(2)." *Id.* at 663-664.

In *Pistillo v. Commissioner,* 912.F.2d 145 (6th Cir. 1990), revg. T.C. Memo. 1989-329, the issue again was a payment made pursuant to an agreement settling an ADEA lawsuit. The U.S. Court of Appeals for the Sixth Circuit reviewed one of our memorandum decisions, which, like our decision in *Rickel,* held that a payment representing compensatory damages in lieu of backpay was not excludable under section 104(a)(2). Consistent with the Third Circuit in *Rickel,* the Sixth Circuit concluded that an age discrimination lawsuit was analogous to the assertion of a tort-type right to redress personal injuries and found that the entire settlement payment was excludable under section 104(a)(2). *Pistillo v. Commissioner,* 912 F.2d at 149-150. The Sixth Circuit stated that the taxpayer's "loss of wages—a substantial nonpersonal consequence of his employer's age discrimination—did not transform the discrimination into a

nonpersonal injury." *Id.* at 150. The Sixth Circuit noted that—

Given the result we reach today, Pistillo will have less federal tax liability than if he had not suffered age discrimination in the first place. The reality, however, as opposed to the hypothetical, is that Pistillo did suffer invidious age discrimination. Pistillo endured his employer's indignities, insults and age discrimination; suffered a dignitary tort; and was personally injured. * * * Pistillo is now entitled to receive federal tax treatment *equal* to that received by the typical tort victim who suffers a physical injury and, as a result, receives a settlement award. [*Id.* at 150; citations omitted.]

## C. *We Overrule Our Decisions in Rickel (in Part) and Pistillo*

The decisions of the Third and Sixth Circuits in, respectively, *Rickel* and *Pistillo* are not controlling here under *Golsen v. Commissioner,* 54 T.C. 742, 756-757 (1970), affd. 445 F.2d 985 (10th Cir. 1971), because an appeal would lie to the Seventh Circuit, a circuit that has not yet considered the taxability of nonliquidated damages under the ADEA. Nevertheless, we are free to reject our decisions in *Rickel* and *Pistillo* and to follow the lead of the Third and Sixth Circuits in those cases, if we believe that we have good reason to do so. With that in mind, we have reviewed our decisions and the decisions of the Third and Sixth Circuits in *Rickel* and *Pistillo*. We do not lightly decline to follow our prior decisions; no court bound by the doctrine of stare decisis does. We believe, however, that the Third and the Sixth Circuits have issued well-reasoned decisions and that, in fact, those appellate decisions, and not our decisions in those cases, are more consistent with our decisions in *Metzger v. Commissioner,* 88 T.C. 834, 845 (1987), affd. without opinion 845 F.2d 1013 (3d Cir. 1988) (sex and national origin discrimination), and *Threlkeld v. Commissioner,* 87 T.C. 1294, 1297-1301 (1986), affd. 848 F.2d 81 (6th Cir. 1988) (rejecting the bifurcation of defamation into injury to personal reputation and injury to professional reputation). In short, we no longer can distinguish age discrimination from sex discrimination and wages lost due to prohibited discrimination from income lost due to a defamed professional reputation. Therefore, we overrule our conclusion in *Rickel v. Commissioner,* 92 T.C. 510 (1989),

and *Pistillo v. Commissioner,* T.C. Memo. 1989-329, that backpay or nonliquidated damages based on backpay received on account of a claim under the ADEA are not excludable under 104(a)(2).

In *Rickel v. Commissioner, supra,* 92 T.C. at 518-520, we relied on *Metzger v. Commissioner, supra, Byrne v. Commissioner,* 90 T.C. 1000 (1988), revd. 883 F.2d 211 (3d Cir. 1989), and *Thompson v. Commissioner,* 89 T.C. 632 (1987), affd. 866 F.2d 709 (4th Cir. 1989). The first case, *Metzger v. Commissioner,* 88 T.C. at 838, 845, 848-850, easily can be distinguished on its facts, because the agreement at issue there settled a breach of contract claim that existed independently of any discrimination claims. The second case, *Byrne v. Commissioner, supra,* was reversed on appeal. Finally, the third case, *Thompson v. Commissioner, supra,* dealt with a claim made under the Equal Pay Act of 1963, not the ADEA.[7] We need not today decide how we would proceed if we again faced facts similar to those in *Thompson.*

Respondent simply has confused the nature of petitioner's age discrimination claim with the derivative consequences of the personal injury and with the nature of the relief requested by petitioner in his ADEA complaint. Petitioner's claim against United arose *not* because United allegedly breached some contractual obligation to petitioner *but* because United allegedly breached its duty under the ADEA not to discriminate on the basis of age. United's duty under the ADEA not to discriminate does not depend on a contractual relationship with petitioner and includes hiring situations as well as promotion situations. See 29 U.S.C. sec. 623(a)(1). We recognize that petitioner's recovery here of lost wages is similar to a recovery petitioner might have received in settlement of a contract claim. The record, though, contains no evidence that petitioner had any separate contractual claim against United (such as a claim alleging that United breached an employment or collective bargaining contract with petitioner) requesting lost wages as relief; and we have found that petitioner received the amount at issue in settlement of the ADEA claim, not any other claim. Petitioners, thus, were entitled to exclude under

---

[7]See Equal Pay Act of 1963, Pub. L. 88-38, sec. 3, 77 Stat. 56-57.

section 104(a)(2) the nonliquidated damages received in settlement of the ADEA claim.

IV. *Liquidated Damages Under the ADEA*

A. *The Issue, the Arguments, and Our Conclusion*

We consider next whether section 104(a)(2) permits a taxpayer to exclude from gross income the portion of a payment allocated as liquidated damages in an agreement settling an ADEA civil action.

Petitioner argues that that portion is excludable from gross income as damages received on account of personal injuries. Respondent counters that liquidated damages under the ADEA are equivalent to punitive damages and that section 104(a)(2) does not permit the exclusion of punitive damages. We note that respondent's argument depends initially on the proposition that liquidated damages paid under section 7(b) of the ADEA are paid to the ADEA plaintiff *not* to compensate the plaintiff for anything *but* rather to visit punishment on the defendant. If we find that such liquidated damages are equivalent to punitive damages, then we must either exclude the liquidated damages under *Miller v. Commissioner,* 93 T.C. 330 (1989), revd. 914 F.2d 586 (4th Cir. 1990), or overrule our decision in *Miller,* as this case is not appealable to the Fourth Circuit. See *Golsen v. Commissioner,* 54 T.C. 742, 756-757 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

We conclude, however, that liquidated damages under the ADEA in the hands of the victim are intended to compensate the victim of age discrimination for certain nonpecuniary losses and, thus, are excludable from gross income under section 104(a)(2). *Rickel v. Commissioner,* 92 T.C. 510, 521-522 (1989), revd. on other grounds 900 F.2d 655 (3d Cir. 1990). We need not consider in this case whether we should follow our decision or the decision of the Fourth Circuit in *Miller v. Commissioner, supra,* relating to whether punitive damages that serve no compensatory function are excludable under section 104(a)(2). Instead, we focus on the purpose under the ADEA of awarding liquidated damages to victims of age discrimination and, thus, on the compensatory nature of liquidated damages awarded under the ADEA.

B. *Punitive Versus Compensatory Damages*

Generally, punitive damages paid in a civil action based on tort are designed to punish the tortfeasor for the wrongful act and to deter the tortfeasor and others from similar acts in the future. Restatement, Torts 2d, secs. 901 (comment c), 908 (1979). The purposes of punitive damages are similar to those of fines in criminal law—namely, punishment and deterrence. In contrast to punitive damages, compensatory damages "are designed to place [the tort victim] in a position substantially equivalent in a pecuniary way to that which [the victim] would have occupied had no tort been committed." Restatement, *supra,* sec. 903 (comment a). Compensatory damages can include compensation for both nonpecuniary harms such as bodily harm, illness, physical pain, emotional distress, humiliation, and pain and suffering as well as pecuniary harms such as property damage and loss of past and prospective wages. *Id.* at secs. 903-906.

We recognize that the Supreme Court has stated that ADEA's legislative history "indicates that Congress intended for liquidated damages to be punitive in nature." *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 125 (1985). Respondent argues that this description suggests that liquidated damages under the ADEA are the equivalent of punitive damages and, thus, are not excludable under section 104(a)(2). We rejected that argument in *Rickel v. Commissioner,* 92 T.C. at 521-522, and we again reject that argument. As we suggested in *Rickel v. Commissioner, supra* at 521, the Supreme Court in *Thurston* viewed liquidated damages as an effective deterrent to willful violations of the ADEA and was deciding the extent to which the employer's culpability affected liquidated damages. *Trans World Airlines, Inc. v. Thurston, supra* at 125-129. We do not believe the Supreme Court to have concluded that, from the recipient's perspective, receipt of liquidated damages under the ADEA represents anything other than compensation for those losses that are hard to calculate. See *Powers v. Grinnell Corp.,* 915 F.2d 34, 41 (1st Cir. 1990) ("We believe that the revisionist view reads far too much into the one sentence in *Thurston* upon which it

relies."); *Linn v. Andover Newton Theological School, Inc.,* 874 F.2d 1, 7 n.9 (1st Cir. 1989).

We find support for our view of *Thurston* in the conclusion of several courts that liquidated damages serve both a compensatory and a deterrent or punitive function. In *Rickel v. Commissioner,* 92 T.C. at 521, this Court noted that liquidated damages under the ADEA serve both a compensatory and a deterrent function. Several appellate courts also have recognized that such liquidated damages serve a compensatory and a deterrent function. See *Powers v. Grinnell Corp., supra* at 41-43; *Gilmer v. Interstate/ Johnson Lane Corp.,* 895 F.2d 195, 200 (4th Cir. 1990); *Graefenhain v. Pabst Brewing Co.,* 870 F.2d 1198, 1205 (7th Cir. 1989) ("while liquidated damages serve a deterrent or punitive function, Congress also intended liquidated damages to serve as compensation for a discharged employee's nonpecuniary losses arising from the employer's willful misconduct"); *Blum v. Witco Chemical Corp.,* 829 F.2d 367, 382 (3d Cir. 1987) ("We agree that one purpose of a liquidated damage award is to compensate the plaintiff for the delay in receiving back pay and benefits. However, liquidated damages are also punitive in nature, intended to deter future violations.").

In addition, as we have discussed, the ADEA was modeled in part on the Fair Labor Standards Act of 1938, as amended (the FLSA). See, e.g., 29 U.S.C. sec. 626(b) (ADEA provision incorporating 29 U.S.C. secs. 211(b), 216(b), 216(c), and 217). Regarding the ADEA, the Supreme Court has stated that, "where * * * Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute." *Lorillard v. Pons,* 434 U.S. 575, 581 (1978). We note that liquidated damages under the FLSA have long been viewed as compensation for "damages too obscure and difficult of proof for estimate other than by liquidated damages." *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 707 (1945); *Overnight Motor Transportation Co. v. Missel,* 316 U.S. 572, 583-584 (1942). We have found under both the ADEA and the FLSA that, from the victims' perspective, receipt of liquidated damages compensates victims for those

difficult to measure nonpecuniary losses that are the consequence of the personal injury. *Rickel v. Commissioner, supra,* 92 T.C. at 521.

Finally, the legislative history of the Age Discrimination in Employment Act Amendments of 1978, Pub. L. 95-256, 92 Stat. 189, supports the conclusion that, from the recipient's perspective, liquidated damages under the ADEA are intended to compensate the recipient for certain nonpecuniary losses. The Conference report states that "The ADEA as amended by this act does not provide remedies of a punitive nature." H. Rept. 95-950 (Conf.), at 14 (1978) reprinted in 1978 U.S. Code Cong. & Admin. News 528, 535. The report states also that—

Under section 7(b), which incorporates the remedial scheme of sections 11(b), 16 and 17 of the FLSA, "amounts owing" contemplates two elements: First, it includes items of pecuniary or economic loss such as wages, fringe, and other job-related benefits. Second, it includes liquidated damages (calculated as an amount equal to the pecuniary loss) which compensate the aggrieved party for nonpecuniary losses arising out of a willful violation of the ADEA.

H. Rept. 95-950, *supra* at 13. See *Pfeiffer v. Essex Wire Corp.,* 682 F.2d 684, 687 (7th Cir. 1982).

C. *Conclusion*

In sum, we conclude that, from the victim's perspective, receipt of liquidated damages under the ADEA compensates the victim of age discrimination for certain nonpecuniary losses. *Rickel v. Commissioner,* 92 T.C. at 521-522. We find that such liquidated damages are excludable under section 104(a)(2). *Id.* We, thus, hold that petitioners are entitled under section 104(a)(2) to exclude from gross income both the nonliquidated and the liquidated damages received in settlement of the ADEA claim.

*Decision will be entered under Rule 155.*

Reviewed by the Court.

CHABOT, KÖRNER, SWIFT, GERBER, WRIGHT, PARR, RUWE, WHALEN, COLVIN, and BEGHE, *JJ.,* agree with the majority opinion.

HAMBLEN, *J.,* did not participate in the consideration of this opinion.

---

COHEN, *J.,* concurring in part and dissenting in part: I agree with the majority opinion insofar as it holds that the amount received by petitioner as liquidated damages is excludable from taxable income under section 104(a)(2). I dissent, however, insofar as the majority holds that section 104(a)(2) also excludes from taxation amounts designated wages or backpay in the ADEA, in petitioner's complaint against his employer, in the settlement documents, on petitioner's tax return, and in the petition prior to amendment. The majority's use of the term "nonliquidated damages" (an anomalous term when applied to amounts actually calculated by reference to a wage schedule) is an understandable attempt to disregard labels in redetermining the substantive nature of the award. I submit, however, that the label given to these amounts by the Congress, by the employer, by the employee, and by this Court in prior opinions describes the substance of the payment and should result in taxability. Among other things, the majority disregards previously settled law that the intent of the payor as to the purpose in making the payment must be examined. See *Knuckles v. Commissioner,* 349 F.2d 610 (10th Cir. 1965), affg. a Memorandum Opinion of this Court; *Metzger v. Commissioner,* 88 T.C. 834, 847-848 (1987), affd. without published opinion 845 F.2d 1013 (3d Cir. 1988); *Fono v. Commissioner,* 79 T.C. 680, 694 (1982), affd. without published opinion 749 F.2d 37 (9th Cir. 1984).

In *Rickel v. Commissioner,* 92 T.C. 510 (1989), affd. in part and revd. in part 900 F.2d 655 (3d Cir. 1990), we focused our attention on the characterization of the liquidated damages awarded under the ADEA, noting that "This Court and others have consistently held that amounts received in lieu of wages, salary, or lost profits are includable in income." 92 T.C. at 518. Although the characterization of the ADEA claim was one of first impression, we found the situation analogous to claims of sex discrimination in *Metzger v. Commissioner,* 88 T.C. 834, 851-852 (1987), affd. without published opinion 845 F.2d

1013 (3d Cir. 1988); *Thompson v. Commissioner*, 89 T.C. 632, 649-650 (1987), affd. 866 F.2d 709 (4th Cir. 1989); and *Byrne v. Commissioner*, 90 T.C. 1000, 1010-1011 (1988), revd. and remanded 883 F.2d 211 (3d Cir. 1989).

In *Rickel,* as here, respondent argued that the ADEA creates a contract action, not a tort action, and that the liquidated damages are punitive in nature and therefore taxable. Respondent relied on *Rogers v. Exxon Research & Engineering Co.*, 550 F.2d 834, 838 (3d Cir. 1977), where the Court of Appeals for the Third Circuit had characterized ADEA actions and stated that "A suit for damages consisting of back wages arising out of the breach of an employment agreement is a routine contract action where the parties would be entitled to a jury under the Seventh Amendment." Rejecting respondent's contention, we stated:

The holding of * * * [*Rogers*] neither establishes exclusivity of the contract claim nor negates a tort remedy under the ADEA. Like the FLSA and the Equal Pay Act, the ADEA contains elements of both contract and tort claims. Specifically, while damages in lieu of wages are in the nature of a breach of contract action, liquidated damages are intended as compensation for a tort or tort-like injury. [92 T.C. at 520-521.]

Our conclusion concerning the dual nature of the claims settled was consistent with the analysis and conclusions in our prior opinions in *Thompson v. Commissioner*, 89 T.C. at 646-647, and *Byrne v. Commissioner*, 90 T.C. at 1008-1010.

In *Byrne v. Commissioner*, 883 F.2d 211 (3d Cir. 1989), revg. and remanding 90 T.C. 1000 (1988), and in *Rickel v. Commissioner*, 900 F.2d 655 (3d Cir. 1990), affg. in part and revg. in part 92 T.C. 510 (1989), the Court of Appeals for the Third Circuit rejected our approach of bifurcating the types of claims under the FLSA and ADEA and allocating the wage claims to a contract action and the liquidated damages to a tort action. The Court of Appeals in *Rickel v. Commissioner, supra,* cited various cases categorizing race discrimination in the workplace as a tort claim for personal injuries. The Court of Appeals for the Third Circuit held that all the damages received by the taxpayer on account of age discrimination are excludable under section 104(a)(2), acknowledging:

Of course, it might be troubling to some that a successful plaintiff in an ADEA suit will make out better, vis-á-vis federal income tax liability, than if the plaintiff had not been discriminated against in the first place. Although this concern is understandable, we note that we are simply following the Treasury regulation that injects into the analysis tort and contract concepts. Moreover, the successful ADEA plaintiff is being treated no better (or worse now) than the typical tort victim who suffers a physical injury. * * * [900 F.2d at 664.]

In *Pistillo v. Commissioner*, 912 F.2d 145 (6th Cir. 1990), revg. and remanding T.C. Memo. 1989-329, and in *Burke v. United States*, 929 F.2d 1119 (6th Cir. 1991), the Court of Appeals for the Sixth Circuit followed a similar analysis and reached the same result in cases involving age discrimination and sex discrimination, respectively.

The Court of Appeals for the Third Circuit in *Rickel* and the Court of Appeals for the Sixth Circuit in *Burke* suggested that our opinion abandoned the line of cases that had held that all consequences of personal injury, whether economic or physical, are excludable from taxable income under section 104(a)(2). See *Roemer v. Commissioner*, 716 F.2d 693, 697 (9th Cir. 1983), revg. 79 T.C. 398 (1982); *Miller v. Commissioner*, 93 T.C. 330 (1989), revd. and remanded 914 F.2d 586 (4th Cir. 1990); *Metzger v. Commissioner*, 88 T.C. 834 (1987), affd. without published opinion 845 F.2d 1013 (3d Cir. 1988); *Threlkeld v. Commissioner*, 87 T.C. 1294 (1986), affd. 848 F.2d 81 (6th Cir. 1988); *Bent v. Commissioner*, 87 T.C. 236 (1986), affd. 835 F.2d 67 (3d Cir. 1987). The disputed payments in these cases, however, did not arise from settlement of claims that could be characterized as contractual. *Roemer, Threlkeld,* and *Miller* involved damages for defamation made against third-party tortfeasors, not against the taxpayer's employer. *Bent* involved infringement of the taxpayer's First Amendment freedoms by refusal to rehire him. His contract claims had been expressly rejected by the State court prior to the settlement payment in issue. See the dissenting opinion of Judge Wellford in *Burke v. United States*, 929 F.2d at 1123.

In *Metzger*, the taxpayer received payment in settlement of her claim of violation of her rights to be free from discrimination on account of sex and national origin. We stated:

excludability depends on what was the injury complained of, and the loss of income may merely be "an evidentiary factor" (*Bent*) or "the best measure of loss" (*Threlkeld*). * * * in the instant case (1) the evidence is clear that no effort was made to calculate an amount of back pay, (2) the evidence is clear that the college and petitioner sought to settle all the claims for a single lump sum, (3) the college believed that petitioner's contract claim might result in a liability of $15-20,000, and (4) most of petitioners' claims were tort or tort-type claims on account of personal injuries and were not for back pay * * * . [88 T.C. at 858.]

In *Metzger*, the taxpayer had not claimed that more than half of the damages received was for tort claims. See the dissenting opinion of Judge Wellford in *Burke v. United States*, 929 F.2d at 1123.

In *Byrne v. Commissioner*, 90 T.C. 1000, 1011 (1988), revd. and remanded 883 F.2d 211 (3d Cir. 1989), and in *Thompson v. Commissioner*, 89 T.C. 632, 649-650 (1987), affd. 866 F.2d 709 (4th Cir. 1989), equal amounts were allocated by this Court to tort claims and contract claims based on the evidence in those cases. The Court of Appeals in *Rickel* stated:

Neither in *Byrne* nor the instant case had the taxpayer performed uncompensated services for the employer after the challenged discrimination. On the contrary, both taxpayers were seeking compensation for *their inability to earn an income* due to the tortious action of their employers. Thus, our decision today does not conflict with *Thompson*. Of course, we do not decide whether we would adopt the reasoning of *Thompson* given a similar factual scenario. [900 F.2d at 664-665 n.16; emphasis in original.]

This statement was made in response to a suggestion by the Government that the Third Circuit opinion in *Byrne* was inconsistent with the Fourth Circuit opinion in *Thompson*.

In summary, the difference between prior opinions of this Court, on the one hand, and the Courts of Appeals for the Third and Sixth Circuits, on the other, is whether the plaintiff's statutory right in an ADEA lawsuit comprises both contract and tort claims or whether all of the plaintiff's recovery is "on account of" personal injury.

In this case as in its predecessors, we are dealing with statutory rights and remedies that may find analogies in State tort or contract law. Regardless of the labels, however, the tax consequences should be determined by

substance. As stated by the majority in this case, "petitioner sought in his complaint, inter alia, reinstatement, retroactive seniority rights, employee benefits as if petitioner's employment had not been interrupted, backpay plus interest, and liquidated damages." Petitioner's employer had contracted to pay wages to petitioner at a specified rate during the period of petitioner's employment. Historically, employees have been entitled to backwages when employment is wrongfully terminated. The ADEA establishes age discrimination as a wrongful cause of termination. Thus, the employer's interruption of petitioner's employment was unlawful, and the obligation to pay wages continued. The portion of the award labeled backwages is in substance backwages, i.e., it is replacement of lost income, not compensation for personal injury. Thus, it is distinguishable from amounts received from third-party tort-feasors or because of the wrongful conduct of the employer.

With respect to the liquidated damages portion, in *Rickel v. Commissioner*, 92 T.C. at 521-522, we held that liquidated damages in the hands of the taxpayer were compensatory, notwithstanding language in *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125 (1985), that "The legislative history of the ADEA indicates that Congress intended for liquidated damages to be punitive in nature." Other cases have characterized liquidated damages under the ADEA as punitive damages intended to deter conduct of an employer. *Gilchrist v. Jim Slemons Imports, Inc.*, 803 F.2d 1488, 1494 (9th Cir. 1986); *Kelly v. American Standard, Inc.*, 640 F.2d 974, 979 (9th Cir. 1981). Yet the majority has no trouble characterizing the liquidated damages portion of the award to petitioner as compensatory in the hands of the taxpayer and not treated as punitive damages for tax purposes because of language taken out of the context of other cases. I agree with this approach. I believe that we should follow it also with respect to the backwages rather than merely applying the language of other cases describing the ADEA action as involving tort-type rights.

In a footnote in our opinion in *Byrne v. Commissioner*, 90 T.C. 1000, 1011 n.10 (1988), revd. and remanded 883 F.2d 211 (3d Cir. 1989), we remarked:

Petitioner, relying on *Roemer v. Commissioner,* 716 F.2d 693, 696 (9th Cir. 1983), revg. 79 T.C. 398 (1982), argues that once she has shown the existence of tort claims, she is not required to present evidence going to an allocation of the damages between tort and contract claims. Her reliance on *Roemer* is misplaced. *Roemer* recognized that when the claim at the root of a damage award was a tort claim, the amount of damages would be measured in part by lost wages, but that the tort award should not be treated as income to the extent it was so measured. This Court has followed that principle. See *Metzger v. Commissioner,* 88 T.C. at 857-858; *Bent v. Commissioner,* 87 T.C. at 250; *Threlkeld v. Commissioner,* 87 T.C. 1294, 1299 (1986). However, the situation here does not fall within the *Roemer* principle cited by petitioner. Here, we have been unable to find that the claims settled were solely claims of a tort-like nature. Since both personal injury claims and other claims are settled by the release, the burden is on petitioner to present evidence to allocate the settlement payment between includable and excludable amounts.

Neither *Rickel v. Commissioner,* 92 T.C. 510 (1989), affd. in part and revd. in part 900 F.2d 655 (3d Cir. 1990), nor this case presents difficulty in allocation. Here, the parties expressly agreed that 50 percent of the payment received was for backpay, the employer withheld taxes on that amount, and petitioners originally reported that amount as taxable income on their return. The stipulated facts establish that the employer and the employee each regarded only the amount received as liquidated damages excludable under section 104.

In *Rickel v. Commissioner, supra,* the Court of Appeals for the Third Circuit's own prior characterization of an action for backwages as "a routine contract action" was dismissed in a footnote as follows:

We do not believe that *Rogers v. Exxon Research & Enq'q Co.,* 550 F.2d 834 (3d Cir. 1977), *cert. denied,* 434 U.S. 1022 (1978), compels a different conclusion. First, the *Rogers* court was characterizing an ADEA action for purposes of determining whether an ADEA plaintiff had the right to a jury trial under the Act, not for tax purposes. *Id.* at 838-39. Second, the conclusion by the *Rogers* court that an ADEA action is a "routine contract action" was gratuitous given that the holding was simply that an ADEA action involves rights and remedies of the sort typically enforced in an action at law. *Id.* And, third, we do not hold today that there are no elements in an ADEA action that do not possess contract type features, only that age discrimination, for purposes of sec. 104(a)(2) of the IRC, is a personal injury and an ADEA action to redress that injury is more like the assertion of a tort type right. [*Rickel v. Commissioner,* 900 F.2d at 663 n.13.]

I respectfully suggest that this rationale does not justify allocation of 100 percent of the ADEA award to a personal injury.

NIMS, PARKER, CLAPP, JACOBS, and WELLS, *JJ.*, agree with this opinion.