T.C. Memo. 1998-18


UNITED STATES TAX COURT


WILLIAM J. GOEDEN AND CAROL S. GOEDEN, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 21994-94.               Filed January 14, 1998.


John W. Hein, for petitioners.

J. Paul Knap, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


WRIGHT, Judge:  Respondent determined deficiencies in
petitioners' Federal income taxes, an addition to tax for
substantial understatement of tax and accuracy-related penalties,
as follows:

| Year | Deficiency | Addition to Tax Sec. 6661 | Penalty Sec. 6662(a) |
|------|-----------|---------------------------|----------------------|
| 1988 | $8,760 | $2,190 | --- |
| 1989 | 2,423 | --- | $485 |
| 1990 | 7,532 | --- | 1,506 |

Petitioners have alleged and claimed in their petition that, based on their amended Federal income tax returns for 1988, 1989, and 1990, they are entitled to refunds for those years in the amounts of $896, $1,567, and $1,574, respectively.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions by respondent,[1] the issues to be decided are: (1) Whether all or any part of the payments received in the years 1988 through 1990 by petitioner William J. Goeden from State Central Credit Union, pursuant to a settlement agreement, is excludable from gross income under section 104(a)(2) as damages received on account of personal injuries; (2) whether petitioners are entitled to deduct any part of attorney's fees

---

[1] Respondent has conceded that the value of health and life insurance coverage received by petitioner from State Central Credit Union during the years in issue is excludable from gross income. Respondent has also conceded that, to the extent attorney's fees were paid in 1988 for the purpose of obtaining taxable income, petitioners are entitled to deduct such fees as a miscellaneous itemized deduction in that year.

paid in 1988 in connection with the settlement agreement; (3) whether petitioners are liable for the addition to tax for substantial understatement of tax under section 6661 for 1988; and (4) whether petitioners are liable for the accuracy-related penalties under section 6662(a) for 1989 and 1990.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Petitioners resided in Brookfield, Wisconsin, at the time their petition was filed in this case.

William J. Goeden (petitioner) was employed in several positions by State Central Credit Union (the credit union) from January 14, 1957, until he resigned on September 15, 1988, serving as its president since April 1, 1981. Petitioner did not have a written employment contract with the credit union at any time during his employment.

On February 29, 1988, at an executive session of the credit union's board of directors, a majority of the board (by a 4 to 3 vote) passed a resolution authorizing and directing its chairman to:

    (1)    Provide written notice to Mr. William J. Goeden, President of State Central Credit Union, that the Board may remove him as an officer and director of State Central Credit Union for violation of applicable law, the Articles of Incorporation of State Central, the

Bylaws and/or for any other good and sufficient cause including but not limited to the following:

    (a)  The NCUA's [National Credit Union Association] expressed concerns over management practices including underwriting policies and collection policies;

    (b)  Mismanagement associated with Dale Armstrong and Cemetery Services, Inc.;

    (c)  Mismanagement associated with the purchase of automobile conditional sales contracts;

    (d)  Mismanagement associated with the failure to follow applicable FHA regulations in connection with its home improvement loan program;

    (e)  Mismanagement associated with employee problems and concerns; and

    (f)  Failure to follow Board policies and Bylaws in connection with the foregoing.

(2)  Set forth in writing the reasons for the proposed removal;

(3)  Establish a time and location at which Mr. Goeden may appear before the Board to rebut allegations made against him which such time to be not less than five (5) business days subsequent to mailing to Mr. Goeden the Written notice described herein.

Various matters pertaining to petitioner's employment were discussed at nine board meetings held between April 8, 1988, and September 15, 1988. Although some of the allegations of petitioner's mismanagement were challenged by some board members as being false, neither petitioner nor his attorney, as reflected in the board's minutes, specifically indicated at board meetings that a suit based entirely on libel, injury to professional reputation, or defamation would be brought by petitioner against

the credit union.  Petitioner never filed suit against the credit union for libel, defamation, or any other cause of action.

Members of the board expressed serious concern at some meetings about their possible personal liability as directors and about a potential breach of petitioner's implied employment contract.  A claim of age discrimination was also a concern of the board, as well as avoiding a possible suit for "wrongful termination" under Wisconsin laws.  In at least two board meetings the members' discussion related to a settlement based on retirement pay for petitioner.

At the May 4, 1988, board meeting petitioner's attorney argued that petitioner committed no wrongs, that his proposed termination would be unfair, and that he was being used as a scapegoat for the credit union's problems.  He charged that petitioner's proposed termination was not in keeping with the employee relations policies of the credit union.  Consequently, he stated that petitioner's proposed termination would be regarded as a breach of his employment contract and that board members who voted in favor of termination would be exposed to personal liability.  He stated that there would be extensive discovery and litigation if petitioner were discharged.

In the board's executive session on May 4, 1988, a member stated that it was necessary to determine whether the board needed "just cause" to terminate petitioner and whether the

discharge could be considered a "wrongful termination".  A member also expressed concern that the board could be sued by petitioner and inquired whether the board's indemnity policy would pay for any damages which might result.

The charges of mismanagement made against petitioner caused damage to his professional reputation in the credit union industry and prevented him from obtaining another responsible position in his profession at the management level.  He was asked to resign as a member of the board of directors of the Tyme Corporation.

On or about September 15, 1988, petitioner and the credit union entered into a written settlement agreement which provided, in pertinent part, as follows:

>     WHEREAS, the Board of Directors of the Credit Union instituted proceedings on February 29, 1988, to consider the removal of Goeden from his positions as President and Director of the Credit Union.
>
>     WHEREAS, Goeden has indicated litigation would be commenced against the Credit Union and any directors who participated in his removal as President and Director and it is anticipated such litigation would be protracted, complicated and time-consuming for the parties;
>
>     WHEREAS, it is the mutual intent of the parties that the payments made pursuant to this Settlement Agreement are made by or on behalf of the Credit Union and received by Goeden in settlement of any and all claims Goeden may have against the Credit Union or any of its officers and/or directors, either individually or in combination with others, including but not limited to any and all claims for defamation, libel, slander, age discrimination, tortious interference with Goeden's trade, profession and right to earn a living, injury to Goeden's business and professional reputation and standing in the business community and

tortious interference with Goeden's right to be free from interference with his employment or other claims entitling Goeden to seek compensatory damages for personal injuries, injury to Goeden's feelings and humiliation and damages for alleged violations of his civil and statutory rights;

\*   \*   \*   \*   \*   \*   \*

NOW, THEREFORE, in consideration of the promises contained herein, the parties agree as follows;

1.  The parties to this Agreement will execute the General Mutual Release and Statement that is attached as Exhibit A and incorporated herein.

2.  Goeden will receive the sum of Fifty Thousand Dollars ($50,000) immediately upon execution of this Settlement Agreement.

3.  The Credit Union will be responsible for the payment to Goeden of monthly monetary sums as follows:

    (a)  Three Thousand Five Hundred Dollars ($3,500) commencing as of September 15, 1988, and thereafter paid monthly with the final payment to be made on or by October 15, 1992.

    (b)  Three Thousand Four Hundred Sixty Seven Dollars ($3,467) paid on or by November 15, 1992, and Three Thousand Dollars ($3,000) thereafter paid monthly with the final payment to be made on or by October 15, 1995, in the amount of Three Thousand Four Hundred Dollars ($3,400);

    (c)  Taxes, if any, with regard to the payments are Goeden's responsibility.

    (d)  The above payments are to be made to Goeden on or by the 15th day of each month.

    (e)  In the event of Goeden's death, the payments will be paid to his spouse, if living, or to his estate if not.  Payments to Mrs. Goeden would be made to her estate if she were to die after Goeden and during the period when such payments are required hereunder.

(f)  Earnings from other sources will not serve to reduce or be offset against any payments or benefits due to or received by Goeden, Mrs. Goeden or their estates hereunder.

(g)  The above payments may not be reduced, eliminated or set-off against future claims, if any, the Credit Union might bring against Goeden unless and until a final non-appealable judgment or court order has been entered against Goeden with respect to such claim or claims.

4.  Goeden will resign as President and terminate his employment with the Credit Union as of September 15, 1988.  Goeden's employment termination will be recorded as a Board approved early retirement. Goeden will not seek or accept any future relationship with the Credit Union as an officer, director or employee.

The settlement agreement also provided that the credit union would continue to pay group health and dental insurance for petitioner and his family until he reached age 65 (he was then 57), and to pay certain premiums on his life insurance.  The credit union agreed to provide petitioner with Medicare Supplement Insurance after he reached age 65.

The settlement agreement did not allocate the payments received by petitioner to any particular cause of action.

On September 15, 1988, petitioner and the credit union signed a general mutual release and statement.  In it, petitioner agreed to discharge from liability the credit union and its directors and officers for any and all causes of action, including age discrimination, breach of contract whether express

or implied, and libel, slander, defamation, damage to reputation, and intentional or negligent infliction of emotional distress.

Pursuant to the settlement agreement, petitioner received from the credit union a lump-sum payment of $50,000 on September 15, 1988, and monthly payments totaling $14,000 in 1988, $42,000 in 1989, and $42,000 in 1990.

In an attachment to their Federal income tax returns for each of the years 1988, 1989, and 1990, relying on the advice of their certified public accountant from KPMG Peat Marwick, the firm which prepared them, petitioners reported an amount under "miscellaneous other income" which was 25 percent of the monthly payments as the "taxable portion of settlement with State Central Credit Union".  They also reported in 1988 an amount that was 25 percent of the $50,000 lump-sum payment.  They claimed a deduction of $13,750 for attorney's fees paid in 1988.  The returns did not disclose the full amount of the payments received by petitioner or the percentage reported.  The returns did not report as income any part of the value of petitioner's health and life insurance coverage.

On or about December 9, 1991, petitioners filed amended Federal income tax returns for 1988, 1989, and 1990, containing the following explanation:

> On the return as originally filed the taxpayer had included in Other Income the "taxable portion" of settlement proceeds received from State Central Union.  The settlement proceeds arose from an employment discrimination claim.

At the time the returns were prepared, there were a few court cases which supported an allocation of the proceeds between personal injury damages (nontaxable) and contract-type claims (taxable).  Based on such decisions, the taxpayer allocated 25% of the proceeds to contract-type claims and allocated the remaining 75% of the proceeds as nontaxable personal injury payments.

Recently, the courts have reversed earlier cases and have ruled favorably for the taxpayers, as they have ruled that 100% of the payments in similar fact cases should be excludible from taxable income.  Specifically, the <u>Downey v. Commissioner</u>, 97 T.C. 10 (1991) case recently overruled its prior decision in <u>Rickel v. Commissioner</u>, 90-1 USTC Para 50,200 (3rd Cir. 1990).

Thus, petitioners claimed in the amended returns that all of the payments received by petitioner were excludable from gross income under section 104(a)(2).  Consequently, they adjusted their itemized deductions by claiming that the attorney's fees are not deductible.  The amended returns claimed refunds of $896 for 1988, $1,567 for 1989, and $1,574 for 1990.

In the notice of deficiency dated August 30, 1994, respondent increased petitioners' gross income by $48,437 in 1988, $31,500 in 1989, and $31,500 in 1990, including in their gross income all of the monthly payments petitioner received from the credit union and all of the $50,000 lump-sum payment.  The notice allowed an additional itemized deduction of $41,250 in 1988 for attorney's fees.

The petition filed in this case on November 28, 1994, prior to the Supreme Court's decision in <u>Commissioner v. Schleier</u>, 515

U.S. 323 (1995), alleged that petitioner had causes of action against the credit union for libel and age discrimination.

OPINION

Issue 1.  Excludability of Settlement Payments

Petitioners contend that the payments received by petitioner from the credit union pursuant to the terms of the settlement agreement were based entirely on tort or tort type claims and therefore all of the payments are excludable from gross income under section 104(a)(2).  To the contrary, respondent contends that all of the payments received by petitioner are includable in his gross income because they were made by the credit union for reasons which rendered them subject to tax.  We agree with petitioners in part and with respondent in part.  Based on this record, we conclude that an allocation should be made.

Section 61(a) provides that, except as otherwise provided in the Code, gross income means "all income from whatever source derived".  The Supreme Court has stated that the statutory definition of gross income is broad and reflects Congressional intent to exert the full measure of its taxing power and to bring within the definition of income any accession to wealth.  United States v. Burke, 504 U.S. 229, 233 (1992).  Thus, any receipt of funds or other accession to wealth received by a taxpayer is presumed to be gross income unless the taxpayer can establish that the accession fits into one of the specific exclusions

created by other sections of the Code.  <u>Commissioner v. Glenshaw Glass Co.</u>, 348 U.S. 426, 430-432 (1955).

One exclusion is contained in section 104(a)(2).  It permits a taxpayer to exclude from gross income "the amount of any damages received (whether by suit or agreement and whether as lump-sums or periodic payments) on account of personal injuries or sickness".  Section 1.104-(1)(c), Income Tax Regs., defines the term "damages received (whether by suit or agreement)" as an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution.

The Supreme Court, in addressing the scope of section 104(a)(2), has applied the default rule of statutory interpretation that exclusions from income must be narrowly construed.  <u>Commissioner v. Schleier</u>, 515 U.S. at 328.  Thus, a taxpayer seeking the exclusion must demonstrate not only that the underlying claim giving rise to the recovery was based on tort or tort type rights but also that the damages were received on account of personal injuries or sickness.  <u>Id.</u> at 336-337.

In the absence of express language in the settlement agreement stating how the payments made to petitioner should be allocated "on account of personal injuries", the intent of the payor (the credit union) in making the payments is a key factor

to consider in applying section 104(a)(2). Knuckles v. Commissioner, 349 F.2d 610, 612 (10th Cir. 1965), affg. T.C. Memo. 1964-33; Stocks v. Commissioner, 98 T.C. 1, 10 (1992).

As indicated in our findings of fact, the credit union's board of directors had several motives for making the payments to petitioner. The documentary or testimonial evidence shows that such motives were to avoid (1) a suit for libel, defamation, or damage to petitioner's professional reputation; (2) a suit for age discrimination or wrongful discharge; (3) expenses of litigation; and (4) claims for breach of an implied employment contract. In addition, the board wanted to provide petitioner with retirement pay. Because the intent of the credit union in making payments to petitioner is derived from all of the above motives, we think an allocation of the payments is appropriate and necessary under these facts and circumstances. Stocks v. Commissioner, supra at 16-17.

In view of the testimony of Hugo W. Wandt, Jr., and Richard H.E. Smith, who were members of the credit union's board of directors, and William French, an attorney who represented petitioner in negotiations with the board, we are persuaded that the claim for defamation and damage to professional reputation was the predominant reason motivating the credit union's payments to petitioner. Respondent did not attempt to rebut this testimony by calling witnesses, especially other members of the

credit union's board of directors.  Instead, respondent countered with the assertion that petitioners failed to carry their burden of proof as to the intent of the payor credit union.  We reject this assertion.

Respondent does not dispute that payments received on account of traditional causes of action for libel, slander, personal embarrassment, or defamation are excludable from gross income, whether the damage is to the taxpayer's personal or professional reputation.  See Threlkeld v. Commissioner, 87 T.C. 1294 (1986), affd. 848 F.2d 81 (6th Cir. 1988).

Other evidence shows that some of the payments were motivated by claims that were not "on account of personal injuries" within the scope of section 104(a)(2) and, consequently, are includable in petitioner's gross income.

Accordingly, it is our best judgment, based on the record as a whole, that 60 percent of the payments are allocable to the potential claim for defamation and damage to professional reputation and 40 percent to the other potential claims. Therefore, we hold that 60 percent of the payments received by petitioner are excludable from his gross income under section 104(a)(2), and the remainder is includable in his gross income.

Issue 2.  Deductibility of Attorney's fees

Having concluded that 60 percent of the payments to petitioner are excludable from gross income and 40 percent are

includable, it follows that the attorney's fees should be allocated in the same proportion as the excludable and includable portions of the settlement payments. Section 265(a)(1) precludes a deduction for an amount paid for legal fees if it is allocable to a class of income exempt from taxation. See also Stocks v. Commissioner, 98 T.C. at 18; Metzger v. Commissioner, 88 T.C. 834, 860 (1987), affd. without published opinion 845 F.2d 1013 (3d Cir. 1988); sec. 1.265-1(c), Income Tax Regs. We so hold.

Issue 3. Section 6661 Addition to Tax

Respondent determined that petitioners are liable for an addition to tax under section 6661 for substantial understatement of tax for 1988. Petitioners contend that they are not liable for the addition to tax because (1) there was substantial authority for reporting as taxable only part of the settlement payments received in that year, and (2) their Federal income tax return adequately disclosed the settlement with the credit union. We agree with petitioners.

Section 6661(a), for returns due on or before December 31, 1989, provided for an addition to tax if there was a substantial understatement of income tax for the taxable year. In the case of additions to tax assessed after October 21, 1986, the amount of the addition to tax is equal to 25 percent of the amount of any underpayment attributable to such understatement. Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509, sec. 8002(c),

100 Stat. 1874, 1951; <u>Licari v. Commissioner</u>, 946 F.2d 690, 692 (9th Cir. 1991), affg. T.C. Memo. 1990-4; <u>Pallottini v. Commissioner</u>, 90 T.C. 498 (1988).

Section 6661(b)(1)(A) provided that a substantial understatement of income tax exists if the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. An understatement was defined as the excess of the amount of tax required to be shown on the return for the taxable year over the amount of tax imposed which is shown in the return, reduced by any rebate. Sec. 6661(b)(2)(A).

In general, section 6661(b)(2)(B) provided that the understatement is deemed to be reduced to the extent it is attributable to: (1) The tax treatment of an item for which there was substantial authority; or (2) any items with respect to which the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return.

At the time petitioners timely filed their Federal income tax return for 1988 there was substantial authority for treating some of the settlement payments petitioner received from the credit union as excludable from his gross income. Damages to professional or business reputation were excludable under section 104(a)(2) as being based on tort or tort type claims. <u>Threlkeld</u>

v. Commissioner, supra (involving a civil lawsuit for malicious prosecution); Roemer v. Commissioner, 716 F.2d 693 (9th Cir. 1983), revg. 79 T.C. 398 (1982) (involving a civil suit for injury to a person's reputation caused by defamatory statements constituting libel).  The law was unsettled with respect to the excludability of claims based on age discrimination.  See Downey v. Commissioner, 97 T.C. 150 (1991), supplemented by 100 T.C. 634 (1993), revd. and remd. 33 F.3d 836 (7th Cir. 1994).

It is problematic whether petitioners adequately disclosed the item regarding the settlement payments in their 1988 return. While it was not a full and detailed disclosure, we are inclined to view it as adequate because respondent was alerted to the fact that petitioner had received settlement payments from the credit union, some taxable and some nontaxable.  The disclosure in the attachment to the return led to respondent's audit of the item which in turn resulted in the principal adjustment contained in the notice of deficiency.

Accordingly, we hold that petitioners are not liable for the addition to tax under section 6661(a) for 1988.

Issue 4.  Section 6662(a) Accuracy-Related Penalties

Respondent determined that petitioners are liable for accuracy-related penalties for negligence under section 6662(a)(1) for 1989, and for a substantial understatement of income tax under section 6662(a)(2) and negligence under section

6662(a)(1) for 1990.  Petitioners contend that they are not liable for the accuracy-related penalties for either year.  We agree with petitioners.

The facts and circumstances as to whether there was a substantial understatement of income tax for 1990 are similar to those pertaining to 1988.  We have previously concluded that for 1988 there was substantial authority for petitioners' treatment of the settlement payments received from the credit union and an adequate disclosure of the item's tax treatment in their return. We reach the same conclusion with respect to 1990 and hold that there was not a substantial understatement of income tax for that year.  See also sec. 6664(c) (relating to reasonable cause and good faith).

For the years 1989 and 1990 we also conclude that petitioners were not negligent in filing their returns.

Taxpayers are liable for a penalty equal to 20 percent of the part of the underpayment to which section 6662(a) applies. Negligence is a lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.  Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982); Neely v. Commissioner, 85 T.C. 934, 947 (1985).  For purposes of section 6662(a), negligence is a failure to reasonably attempt to comply with the provisions of the Internal Revenue Code.  Sec. 6662(c).  The

accuracy-related penalty under section 6662(a) does not apply to any part of an underpayment if the taxpayer shows that there is reasonable cause for that part of the underpayment and that the taxpayer acted in good faith based on the facts and circumstances.  Section 6664(c).

Mr. French, petitioner's attorney during the negotiations with the credit union, was a trial lawyer, not a tax lawyer. Because he thought petitioner needed competent tax advice about how the settlement payments should be reported for Federal income tax purposes, he recommended that petitioner consult James L. Mohr, a certified public accountant and tax specialist with KPMG Peat Marwick.  He introduced petitioner to Mr. Mohr, who was hired to advise petitioner with respect to the tax aspects of the settlement.  KPMG Peat Marwick prepared petitioners' Federal income tax returns for 1988, 1989, and 1990.  Petitioner consulted with Mr. Mohr and provided him with all the necessary and relevant information required for the preparation of the returns.  The information was complete and accurate.  Mr. Mohr did the tax research to determine the then current status of the law under section 104(a)(2).  Although he thought the settlement, for the most part, was based on tort type claims that resulted in the payments' being excludable from gross income, he advised petitioner to report 25 percent of the settlement payments as taxable in an attempt to be reasonable and to avoid future problems in dealing with the issue if questioned on audit by the

Internal Revenue Service.   Later, after this Court's first opinion in <u>Downey v. Commissioner</u>, 97 T.C. 150 (1991), KPMG Peat Marwick prepared amended Federal income tax returns for 1988, 1989, and 1990, which petitioners filed on December 9, 1991, claiming that all of the settlement payments were excludable from petitioner's gross income.

Under some circumstances a taxpayer may avoid liability for negligence if reasonable reliance on a competent professional adviser is shown.   <u>United States v. Boyle</u>, 469 U.S. 241 (1985); <u>Freytag v. Commissioner</u>, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991).   Here it is clear that petitioners made a good faith effort and acted reasonably and prudently in attempting to comply with section 6662 by supplying their certified public accountant with all the information necessary to correctly report the item subject to adjustment.   Petitioners hired an experienced accountant and tax expert, and they relied on his advice.   Therefore, we hold that the imposition of the accuracy-related penalties for negligence for 1989 and 1990 was improper and that petitioners are not liable for them.

To reflect concessions and our conclusions with respect to the contested issues,

<u>Decision will be entered</u>

<u>under Rule 155</u>.