T.C. Memo. 2010-142

UNITED STATES TAX COURT

RONALD W. PARKINSON, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7784-08.                    Filed June 28, 2010.

Ronald W. Parkinson, pro se.

<u>Michele A. Yates</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, <u>Judge</u>:  Respondent determined a $13,817 deficiency
in petitioner's 2005 Federal income tax and a $2,763 accuracy-
related penalty pursuant to section 6662(a).[1]  The issues for

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year in issue, and
all Rule references are to the Tax Court Rules of Practice and
                                        (continued...)

decision are: (1) Whether under section 104(a)(2) petitioner is entitled to exclude from his 2005 gross income certain proceeds he received from settling a lawsuit against his former employer for intentional infliction of emotional distress and invasion of privacy; (2) whether petitioner may claim an overpayment with respect to income taxes withheld from certain disability benefit payments; (3) whether under section 72(t) petitioner is subject to the 10-percent additional tax on an early distribution from a retirement plan account; and (4) whether petitioner is liable for an accuracy-related penalty pursuant to section 6662(a).[2] When he petitioned the Court, petitioner resided in Maryland.

FINDINGS OF FACT

I.  Petitioner's Settlement Proceeds

For 28 years petitioner worked at Anne Arundel Medical Center (the medical center) in Maryland, eventually rising to the position of chief supervisor of the ultrasound and vascular lab department. He regularly worked long hours, often under stressful conditions.

---

[1](...continued)
Procedure. Monetary amounts have been rounded to the nearest dollar.

[2]Respondent concedes that petitioner is not subject to self-employment tax as determined in the notice of deficiency. The notice of deficiency includes a computational adjustment to the taxable amount of petitioner's Social Security benefits based on other changes to adjusted gross income. The parties will take this adjustment into account in the Rule 155 computation.

In 1998, while working at the medical center, petitioner suffered a heart attack. After convalescing he reduced his average workweek at the medical center from 70 to 40 hours. On February 4, 2000, he took medical leave and never returned to work.

Petitioner filed suit in Federal District Court against the medical center and two of its employees. He alleged that the medical center had violated the Americans with Disabilities Act of 1990 (the ADA), 42 U.S.C. secs. 12101-12213, by failing to accommodate his severe coronary artery disease. He also asserted common law claims of intentional infliction of emotional distress and invasion of privacy by the two employees. In 2002 the District Court granted summary judgment against petitioner's ADA claims, finding that he had failed to establish that he was disabled before February 4, 2000, when he ceased working at the medical center. The District Court dismissed the common law claims without prejudice, concluding that they were better addressed by Maryland courts. The Court of Appeals for the Fourth Circuit affirmed the District Court's decision. Petitioner filed a petition for certiorari in the U.S. Supreme Court.

In the meantime petitioner filed a complaint in the Circuit Court for Anne Arundel County, State of Maryland (the State court), reasserting his common law claims against the medical

center and the two employees.  The complaint alleged that the two employees, acting within the scope of their employment, had engaged in "extreme and outrageous misconduct" that caused him to suffer a second heart attack, rendering him unable to work.  More particularly, the complaint alleged that when petitioner reduced his hours at the medical center after suffering his first heart attack, the two named medical center employees harassed and harangued him, pressing him to work overtime and double shifts.  It was during one such harangue on February 4, 2000, he alleged, that he suffered his second heart attack while working at the medical center.  He alleged that even as he was receiving treatment in the emergency room, one of the employees reached him by telephone and demanded that he return to work immediately or else face disciplinary action.  As a result, he alleged, his blood pressure skyrocketed, placing him in grave danger.  He alleged that his second heart attack left him totally disabled.

In his complaint petitioner asserted a claim for intentional infliction of severe emotional distress against the medical center and the two named employees, alleging that he:

> suffered severe emotional distress, manifested by permanent, irreparable physical harm in the form of his second heart attack and its sequelae. * * * [Petitioner's] psychological and medical problems directly attributable to * * * [the medical center's] misconduct forced him to expend substantial sums for treatment, and will necessitate further such expenditures; moreover the harm caused by * * * [the medical center's] misconduct will significantly reduce * * * [petitioner's] earning power.  Moreover,

Defendants' misconduct has caused * * * [petitioner] to lose wages and other benefits of employment and will cause him to continue to lose such wages and benefits in the future. * * *

Using essentially identical language, the complaint also asserted a claim for invasion of privacy against the two named employees individually. The complaint prayed for relief of "Entry of a money judgment against all Defendants, jointly and severally, upon Plaintiff's claim for intentional infliction of emotional distress, for compensatory damages, punitive damages, attorneys' fees and costs". The complaint also prayed for relief against the two named medical center employees with respect to petitioner's claim for invasion of privacy. The complaint sought $500,000 in compensatory damages, $500,000 in punitive damages, attorney's fees, and costs.

On April 20, 2004, a jury trial began in the State court proceedings. On April 21, 2004, the parties reached a settlement, which included dismissal with prejudice of petitioner's claims against the two named medical center employees, as ordered by the State court the same day. By settlement agreement executed April 28, 2004, petitioner and the medical center resolved all their disputes, with the medical center agreeing to pay petitioner $350,000 "as noneconomic damages and not as wages or other income".[3] The settlement

---

[3]The settlement agreement required the medical center to pay (continued...)

agreement stated that neither of the two named medical center employees bore any obligation for this payment to petitioner. Pursuant to the settlement agreement petitioner agreed to drop all his claims, both State and Federal, against the medical center.

In 2005 petitioner received from the medical center a $34,000 payment pursuant to the settlement agreement.[4]  He reported none of this amount on his 2005 Federal income tax return, which he filed on April 15, 2006.

## II.  Disability Benefits

During 2005 petitioner received, with respect to an insurance policy issued by Unum Life Insurance Co. of America (Unum), disability benefit payments totaling $17,082, from which Unum withheld $1,800 of Federal income tax, as reflected on a Form W-2, Wage and Tax Statement, issued by Unum, reporting the payments as "Third-party sick pay".

## III.  Interest and Early Withdrawal Penalties

During 2005 petitioner received taxable interest of $4,513, which he reported on his 2005 tax return.  During 2005 petitioner

---

[3](...continued)
petitioner $250,000 within 30 days of execution of the agreement, another $34,000 in 2005, and $33,000 in each of the years 2006 and 2007.

[4]The record is silent as to petitioner's receipt and tax treatment of other payments under the settlement agreement.

incurred $527 of early withdrawal penalties from two banks. These penalties were not reflected on petitioner's 2005 return.

## IV.   The Notice of Deficiency

In the notice of deficiency issued February 11, 2008, respondent adjusted petitioner's taxable income upward to include the $34,000 settlement payment from the medical center. Respondent adjusted petitioner's taxable income downward to reflect the $527 of early withdrawal penalties.  Respondent also determined that petitioner was liable for a $2,763 accuracy-related penalty pursuant to section 6662(a) and (b)(2) for substantial understatement of income tax.

### OPINION

## I.   Petitioner's Settlement Proceeds

Petitioner does not dispute receiving the $34,000 settlement payment in 2005 but contends that it is not taxable because it represents payment for physical injuries.  The burden of proof is on petitioner.[5]  See Rule 142(a).

On brief, although he concedes that he "bears the burden of proving respondent's determination to be erroneous", petitioner

---

[5]Petitioner has not claimed or shown that he meets the requirements under sec. 7491(a) to shift the burden of proof to respondent as to any factual issue.  Indeed, for the reasons discussed in the text infra, petitioner has not met the threshold condition of sec. 7491(a)(2)(B) that he cooperate with the Secretary's reasonable requests for witnesses, information, documents, meetings, and interviews.

also maintains, inconsistently, that pursuant to section 6201(d) the burden of production has shifted to respondent.  Section 6201(d) provides that if a taxpayer asserts a reasonable dispute with respect to any item of income reported on an information return filed with the Secretary by a third party and the taxpayer has "fully cooperated with the Secretary (including providing, within a reasonable period of time, access to and inspection of all witnesses, information, and documents within the control of the taxpayer as reasonably requested by the Secretary)", the Secretary has the burden of producing reasonable and probative information, in addition to the information return, concerning a deficiency.

Respondent asserts, and petitioner has not denied, that petitioner refused to comply with respondent's requests for information and documents (including the settlement agreement, which respondent ultimately obtained shortly before trial by subpoenaing the medical center) because petitioner believed that providing such information and documents would violate the settlement agreement's confidentiality provisions.  Consequently, because petitioner has not "fully cooperated", section 6201(d) is inapplicable.[6]

---

[6]Because petitioner has not met this threshold condition to invoke sec. 6201(d), we need not decide what effect, if any, this provision would have if it were applicable, given that petitioner has not denied receiving the $34,000 settlement payment.

Generally, gross income includes all income from whatever source derived, including settlement proceeds. See sec. 61(a); Commissioner v. Schleier, 515 U.S. 323, 327-328 (1995). As an exception to this general rule, section 104(a)(2) excludes from gross income "the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness". The statute further provides that for this purpose: "emotional distress shall not be treated as a physical injury or physical sickness. The preceding sentence shall not apply to an amount of damages not in excess of the amount paid for medical care * * * attributable to emotional distress." Sec. 104(a).

Petitioner contends that the settlement payment is excludable under section 104(a) because he received it on account of his physical injuries and physical sickness brought on by extreme emotional distress related to his employment at the medical center. Respondent contends that the settlement payment is not excludable because petitioner received it on account of his claims of emotional distress and invasion of privacy.

Resolution of this dispute turns on the proper characterization of the settlement payment, which hinges on the medical center's intent in making it. See Green v. Commissioner, 507 F.3d 857, 868 (5th Cir. 2007), affg. T.C. Memo. 2005-250;

Stocks v. Commissioner, 98 T.C. 1, 9 (1992). "[T]he critical question is, in lieu of what was the settlement amount paid"? Bagley v. Commissioner, 105 T.C. 396, 406 (1995), affd. 121 F.3d 393 (8th Cir. 1997). This determination is factual. Id. If a settlement agreement allocates a damage award to the underlying claims, and the parties have entered into the settlement agreement in an adversarial context, at arm's length, and in good faith, we generally respect the express allocation. Threlkeld v. Commissioner, 87 T.C. 1294, 1306-1307 (1986), affd. 848 F.2d 81 (6th Cir. 1988). If the settlement agreement does not expressly allocate the payment to the underlying claims, we may consider other facts that reveal the payor's intent, such as the circumstances that led to the agreement, the allegations in the complaint, and the amount paid. Green v. Commissioner, supra at 867; Robinson v. Commissioner, 102 T.C. 116, 127 (1994), affd. in part, revd. in part and remanded on another issue 70 F.3d 34 (5th Cir. 1995); Stadnyk v. Commissioner, T.C. Memo. 2008-289, affd. without published opinion (6th Cir., Feb. 26, 2010).

The settlement agreement does not expressly allocate or characterize the settlement payment other than to state that it was made "as noneconomic damages and not as wages or other income". Under Maryland law the term "noneconomic damages" does not include punitive damages. Md. Code Ann., Cts. & Jud. Proc. sec. 11-108(a)(2)(ii) (LexisNexis 2006). Perhaps for this reason

respondent does not contend that any part of the settlement payment represents punitive damages. Similarly, respondent does not contend that any part of the settlement payment represents attorney's fees or costs. Nor does respondent contend that any part of the settlement payment is allocable to petitioner's ADA claims against the medical center, which petitioner had litigated unsuccessfully in Federal District Court and in the Court of Appeals for the Fourth Circuit. Rather, as previously stated, respondent contends that petitioner received the settlement payment for his common law claims of intentional infliction of emotional distress and invasion of privacy.

We disagree that any part of the settlement payment was attributable to petitioner's claims of invasion of privacy. Petitioner made those claims only against the two named medical center employees, and those claims were dismissed before petitioner and the medical center executed the settlement agreement. Indeed, the settlement agreement expressly states that the two employees bore no obligation for any part of the settlement payment. Treating respondent as having waived any contention that the settlement payment is allocable to any claim other than intentional infliction of emotional distress or invasion of privacy, and finding that no part of the settlement payment is allocable to claims of invasion of privacy, we conclude that the entire settlement payment is allocable to

petitioner's cause of action for intentional infliction of emotional distress.

Respondent asserts that section 104(a) forecloses petitioner from excluding any amount received in settlement of his claim of intentional infliction of emotional distress because "emotional distress is not considered a physical injury or physical sickness". On brief respondent cites a footnote in the section 104(a) legislative history which states: "It is intended that the term emotional distress includes symptoms (e.g., insomnia, headaches, stomach disorders) which may result from such emotional distress." H. Conf. Rept. 104-737, at 301 n.56 (1996), 1996-3 C.B. 741, 1041. The text of the legislative history also contains this statement, which respondent has not referenced: "Because all damages received on account of physical injury or physical sickness are excludable from gross income, the exclusion from gross income applies to any damages received based on a claim of emotional distress that is attributable to a physical injury or physical sickness." Id. at 301, 1996-3 C.B. at 1041. With respect to a claim for emotional distress, then, the legislative history distinguishes damages attributable to physical injury or physical sickness, which are excludable, from damages attributable to emotional distress or "symptoms" thereof, which are not excludable.

In a medical context, a "symptom" is "subjective evidence of disease or of a patient's condition, i.e., such evidence as perceived by the patient".  The Sloane-Dorland Annotated Medical-Legal Dictionary 496 (Supp. 1992).  A "symptom" is distinguished from a "sign", defined as "any objective evidence of a disease, i.e., such evidence as is perceptible to the examining physician, as opposed to the subjective sensations (symptoms) of the patient."  Id. at 476; see also PDR Medical Dictionary 1635 (2d ed. 2000) (contrasting "sign" as "an objective indication of disease" and "symptom, which is a subjective indication of disease"); The New Shorter Oxford English Dictionary, Vol. 2, 3186 (1993) (defining "symptom" as a "subjective indication perceptible to the patient, as opp[osed] to an objective one").

It would seem self-evident that a heart attack and its physical aftereffects constitute physical injury or sickness rather than mere subjective sensations or symptoms of emotional distress.  Indeed, at trial respondent's counsel conceded that petitioner "did suffer some physical injury", stating that he "suffered several heart attacks".[7]  Respondent contends, however, that petitioner received no amount of the settlement payment on

---

[7]The evidence of record suggests no more than two heart attacks.  In any event, in the light of these concessions we find puzzling respondent's assertion on brief that "Petitioner has not established by third party documentation or third party corroboration from the Anne Arundel Medical Center that he suffered any physical injury or sickness * * * in connection with his emotional distress award."

account of his asserted physical injuries or sickness because "his causes of action did not reflect that assertion".  Clearly, however, petitioner's State court complaint did reflect, extensively, his assertions of physical injury and sickness.  The complaint alleged that the actions of the medical center and its employees directly caused his second heart attack.  Further, the complaint alleged that petitioner's complete disability and permanent damage to his cardiovascular system resulted directly from his heart attack.

Insofar as respondent means to suggest that claims of physical injury or sickness are not compensable in a cause of action for intentional infliction of emotional distress, respondent is mistaken.  When it first recognized the tort of intentional infliction of emotional distress, the Court of Appeals of Maryland in Harris v. Jones, 380 A.2d 611, 613 (1977), looked to the Restatement, Torts 2d, sec. 46(1) (1965), which states:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.  [Emphasis added.]

See also Keeton et al., Prosser & Keeton on the Law of Torts, sec. 12, at 64 (5th ed. 1984) ("In the great majority of the cases allowing recovery [on claims of infliction of emotional distress] the genuineness of the mental disturbance has been

evidenced by resulting physical illness of a serious character, and <u>both the mental and the physical elements have been compensated</u>."  (Emphasis added.)).

Insofar as the medical center intended the settlement payment to compensate petitioner for his alleged physical injuries or physical sickness, then, the payment is excludable under section 104(a), notwithstanding that the underlying claim was based on the tort of intentional infliction of emotional distress.  Because petitioner's physical injuries were the overriding focus of his State court complaint, we have no doubt that those physical injuries figured prominently among the "noneconomic damages" for which the settlement payment was made. Petitioner has not established, however, that the settlement payment did not include elements other than compensation for physical injury or physical sickness.  After all, petitioner's State court complaint asserted claims of both physical injury and "psychological" injury that "forced him to expend substantial sums for treatment".  Although the claims of psychological injury seem less fully described in the complaint than the claims of physical injury, on this record we cannot say that they figured any less prominently among the "noneconomic damages" for which the settlement payment was made.

We are mindful that "'when assessing the tax implications of a settlement agreement, courts should neither engage in

speculation nor blind themselves to the settlement's realities'",
but instead should discern "'the claim the parties, in good
faith, intended to settle for.'"  Green v. Commissioner, 507 F.3d
at 868 (quoting Bagley v. Commissioner, 121 F.3d at 395, and
Dotson v. United States, 87 F.3d 682, 688 (5th Cir. 1996)).
Heeding that admonition, we use our best judgment to allocate the
settlement payment.  See Stocks v. Commissioner, 98 T.C. 1
(1992); Gerard v. Commissioner, T.C. Memo. 2003-320; Burditt v.
Commissioner, T.C. Memo. 1999-117; Goeden v. Commissioner, T.C.
Memo. 1998-18; Noel v. Commissioner, T.C. Memo. 1997-113; see
also Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930); Eisler v.
Commissioner, 59 T.C. 634 (1973).  On the basis of all the
evidence we are convinced that at least one-half of the
settlement payment was attributable to petitioner's claims of
physical injury.  On this record, however, we can only speculate
as to what greater amount, if any, of the settlement payment
might be attributable to claims of physical injury rather than to
claims of psychological injury.  Accordingly, bearing against
petitioner, who has the burden of proof, we find that one-half of
the settlement payment was made on account of petitioner's
physical injuries.

We further conclude that the other one-half of the
settlement payment was made on account of petitioner's emotional
distress.  Petitioner would be entitled to exclude only so much

of this portion of the settlement payment as he paid for medical care attributable to emotional distress.  See sec. 104(a) (last sentence).  Petitioner has offered no evidence in this regard. Accordingly, we hold that one-half of the settlement payment that petitioner received in 2005 was made on account of physical injury or physical sickness and is excludable from his gross income under section 104(a)(2).

II.  <u>Overpayment Claims for Withheld Taxes on Disability Benefits</u>

On his 2005 return petitioner included in his taxable income $17,082 of disability benefit payments received with respect to an Unum insurance policy.  At trial petitioner asserted that he had incorrectly reported these benefits as taxable income and for the first time in this proceeding asserted entitlement to a refund of the $1,800 of tax that Unum had withheld on these 2005 benefit payments and also claimed entitlement to refunds of identical amounts he alleges to have been withheld on such benefit payments for each of his other taxable years 2000 to 2009, inclusive.  Generally, this Court will not consider issues raised for the first time at trial.  See <u>VETCO, Inc. & Subs. v. Commissioner</u>, 95 T.C. 579, 589 (1990); <u>Foil v. Commissioner</u>, 92 T.C. 376, 418 (1989), affd. 920 F.2d 1196 (5th Cir. 1990).  In any event, for the reasons discussed below, petitioner cannot prevail on his overpayment claims.

Pursuant to section 6512(b)(1), this Court's overpayment jurisdiction is limited to the same taxable year or years for which the Commissioner has issued a notice of deficiency and with regard to which the taxpayer has timely filed a petition for redetermination. See also sec. 6214(b) (providing that in redetermining a deficiency for any taxable year, the Tax Court shall consider facts for other years as necessary to make that redetermination but in so doing "shall have no jurisdiction to determine whether or not the tax for any other year * * * has been overpaid"). Because the petition seeks a redetermination only of the deficiency for petitioner's 2005 taxable year, we lack jurisdiction over his overpayment claims for any other year.

Moreover, petitioner has not established that he incorrectly reported as taxable income the disability benefit payments he received in 2005.[8] Unless some exclusion applies, disability benefit payments, like income from other sources, are includable in gross income. See sec. 61(a). On brief petitioner suggests that the disability benefits are excludable under section 104(a)(3). Pursuant to section 104(a)(3), petitioner would be entitled to exclude these payments insofar as he might show that

---

[8]The amount of an overpayment that can be determined by the Tax Court is subject to various limitations, including a limitation that the overpayment must be attributable to amounts paid within certain specified time periods. Sec. 6512(b)(3). Because we dispose of petitioner's overpayment claims on other grounds, we need not and do not decide whether these limitations have been satisfied.

they were attributable to his own after-tax contributions.  See

Connors v. Commissioner, T.C. Memo. 2006-239, affd. 277 Fed.

Appx. 122 (2d Cir. 2008); Laws v. Commissioner, T.C. Memo. 2003-

21; sec. 1.104-1(d), Income Tax Regs.  Petitioner has failed to

make such a showing.  The only evidence he has offered in this

regard relates to premium payments he allegedly made in 2007 and

2009 with respect to an Unum long-term care policy.  The evidence

does not establish that this is the same policy with respect to

which he received the disability benefit payments in question.[9]

Nor does the record otherwise establish that the policy to which

the disability benefits are attributable was not paid for by the

medical center with premiums that were not includable in

petitioner's gross income.  Consequently, petitioner has not

shown that he is entitled to exclude the disability benefit

payments under section 104(a)(3).[10]

III.  Section 72(t) Additional Tax

Respondent asserts that petitioner is liable for $527 of

additional tax on an early retirement plan distribution pursuant

to section 72(t).  The notice of deficiency, however, reflects no

---

[9]No policy has been offered into evidence.

[10]Although petitioner has not expressly raised this issue,
we also note that the exception under sec. 105(c) does not apply
because petitioner has not shown that the disability payments in
question were computed "with reference to the nature of the
injury without regard to the period the employee is absent from
work."  See Connors v. Commissioner, T.C. Memo. 2006-239, affd.
277 Fed. Appx. 122 (2d Cir. 2008).

such additional tax.  To the contrary, the notice of deficiency reflects a <u>downward</u> adjustment of petitioner's taxable income to reflect a $527 early withdrawal penalty as reported to respondent on a Form 1099-INT, Interest Income.  Respondent has not sought any increased deficiency in this proceeding.  Accordingly, we need give no further consideration to respondent's ill-founded assertion of a section 72(t) early distribution additional tax.

IV.  Accuracy-Related Penalty

Respondent determined that petitioner is liable for a $2,763 accuracy-related penalty pursuant to section 6662(a) and (b)(2) for a substantial understatement of income tax.  Section 6662(a) and (b)(2) imposes a 20-percent accuracy-related penalty on any portion of a tax underpayment that is attributable to, among other things, any substantial understatement of income tax, defined in section 6662(d)(1)(A) as an understatement that exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000.

The accuracy-related penalty does not apply with respect to any portion of the underpayment if it is shown that the taxpayer had reasonable cause and acted in good faith.  Sec. 6664(c)(1).  This determination is made by taking into account all facts and circumstances.  See sec. 1.6664-4(b)(1), Income Tax Regs.  "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is

reasonable in light of all the facts and circumstances, including the experience, knowledge, and education of the taxpayer." Id. Generally, the most important factor is the extent of the taxpayer's efforts to assess the proper tax liability. Id.

Petitioner appears to have no experience or education in tax law. He believed that the settlement payment was made to compensate him for his heart attack and resulting disability. Although petitioner has failed to show that the entire settlement payment was for physical injuries, we cannot say that his belief was unreasonable, especially considering that the overriding focus of the State court complaint was on his alleged physical injuries. In reaching this conclusion we also take into account the manner in which respondent has characterized the settlement payment, implicitly conceding that it was not made with respect to certain claims (i.e., Federal claims, punitive damages, and attorney's fees) nominally covered by the settlement agreement. It is unclear whether petitioner obtained professional tax advice with regard to this matter. It appears, however, that he has at least a basic understanding of the operative legal principles, and it is not apparent that following professional tax advice would necessarily have altered his position (although it might have better prepared him to carry his burden of proof in this case), especially considering the uncertainty in this area of the law, as manifested by respondent's unduly restrictive

interpretation of section 104(a)(2).  Taking into account all the facts and circumstances, we conclude that petitioner had reasonable cause and acted in good faith in treating the settlement payment as having been received on account of physical injury or physical sickness.  Accordingly, petitioner is not liable for the accuracy-related penalty.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.